NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

In the Matter of the Estate of:

SHIRLEY B. COLE, *Deceased.*

---

CATHY COLE WILLIAMS, *Plaintiff/Appellant*,

*v.*

LORI A. COLE, as Personal Representative and Successor Trustee, and
Individually, *Defendant/Appellee.*

No. 1 CA-CV 12-0810
FILED 4-17-2014

---

Appeal from the Superior Court in Maricopa County
No. PB2010-000279
The Honorable Robert D. Myers, Retired Judge

**AFFIRMED**

---

COUNSEL

Fennemore Craig, P.C., Phoenix
By Roger T. Hargrove, Alexander Arpad

The Valorem Law Group, Chicago
By Stuart J. Chanen, *pro hac vice*
*Co-Counsel for Plaintiff/Appellant*

Snell & Wilmer, L.L.P., Phoenix
By Kevin J. Parker

Steinberg, Burtker & Grossman, Ltd., Chicago
By Richard J. Grossman, *pro hac vice*
*Co-Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Maurice Portley delivered the decision of the Court, in which Judge John C. Gemmill and Chief Judge Diane M. Johnsen joined.

---

**P O R T L E Y**, Judge:

**¶1**　　　Cathy Cole Williams ("Cathy") appeals the judgment entered after a bench trial in favor of Lori Cole ("Lori").[1] Cathy challenges the determination that Lori did not violate Arizona Revised Statutes ("A.R.S.") section 46-456(A) (West 2010),[2] the Vulnerable Adult statute, and did not exert an undue influence over their mother, Shirley Bell Cole ("Mother"). For the foregoing reasons, we affirm.

## FACTUAL[3] AND PROCEDURAL BACKGROUND

**¶2**　　　Mother, the radio voice of "Little Orphan Annie" from 1930-1940, wrote and published her autobiography in 2004, with Susan Cox, entitled "Acting Her Age: My 10 Years as a 10-Year Old." The same year, she divided her estate equally between her two adult daughters, Lori and Cathy, after separately providing for her adult special needs daughter.

**¶3**　　　The mother-daughter relationship with Cathy deteriorated, and Mother told Cathy to stop trying to contact her. Cathy then filed a

---

[1] We refer to individuals by their first names to avoid confusion because they share a common surname.

[2] We cite to the current version of the statute unless there has been a material revision.

[3] We review the facts in the light most favorable to sustaining the judgment. *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51, ¶ 11, 213 P.3d 197, 200 (App. 2009).

petition for appointment of guardianship, but the Illinois probate court dismissed her petition. Mother then executed a new will in 2007 that left her entire estate to Lori and expressly left nothing to Cathy. A year later, Mother quietly moved to Arizona. She passed away in 2010.

**¶4** Lori filed a petition for formal probate of the will. Cathy challenged the 2007 will, claiming it was invalid because Lori had exerted undue influence to disinherit Cathy. She also claimed that Lori violated § 46-456, the Vulnerable Adult statute.

**¶5** Following a ten-day bench trial, the superior court found that: (1) Mother's will was valid and enforceable; (2) Lori did not exert any influence that resulted in Mother disinheriting Cathy; and (3) Lori did not exploit Mother or otherwise violate the Vulnerable Adult statute. Following the entry of judgment, Cathy filed this appeal.

## DISCUSSION

**¶6** Cathy raises three issues on appeal. First, she argues that the superior court erred by failing to apply the correct legal standard to both the undue influence and Vulnerable Adult claims. Second, because of the asserted legal error, she contends the court used the wrong standard to make its findings of fact and conclusions of law. Finally, she argues that a new trial is warranted because the court erred by admitting evidence over her objections that led to the erroneous findings of facts and conclusions of law.

### I.    Undue Influence

**¶7** Cathy challenges the judgment that Lori did not use undue influence on their Mother to change her will in 2007. We review the legal standard the court used de novo because it is a question of law. *Mobilisa, Inc. v. Doe*, 217 Ariz. 103, 107-08, ¶¶ 9-10, 170 P.3d 712, 716-17 (App. 2007). We will not, however, disturb the court's findings of fact unless they are clearly erroneous. *In re Estate of Newman*, 219 Ariz. 260, 265, ¶ 13, 196 P.3d 863, 868 (App. 2008). A finding of fact is not clearly erroneous if it is supported by substantial evidence, even if substantial conflicting evidence exists. *Castro*, 222 Ariz. at 51-52, ¶ 11, 213 P.3d at 200-01 (quoting *Kocher v. Dep't of Revenue of Ariz.*, 206 Ariz. 480, 482, ¶ 9, 80 P.3d 287, 289 (App. 2003)). Evidence is substantial if it allows "a reasonable person to reach the trial court's result." *Davis v. Zlatos*, 211 Ariz. 519, 524, ¶ 18, 123 P.3d 1156, 1161 (App. 2005). "We will not reweigh the evidence or substitute our evaluation of the facts." *Castro*, 222 Ariz. at 52, ¶ 11, 213 P.3d at 201.

¶8    Undue influence occurs if "a person unduly influences a testator or testatrix in executing a will when that person through his power over the mind of the testator or testatrix makes the latter's desires conform to his own, thereby overmastering the volition of testator or testatrix." *In re Estate of McCauley*, 101 Ariz. 8, 10, 415 P.2d 431, 433 (1966). Undue influence is determined at the time the testatrix executes her will and must be shown by a "clear preponderance of the evidence." *In re Estate of Sherer*, 10 Ariz. App. 31, 35, 455 P.2d 480, 484 (1969) (citation omitted) (internal quotation marks omitted). In *Estate of McCauley*, our supreme court outlined eight "significant indicia of the presence or absence of [undue] influence." 101 Ariz. at 10-11, 415 P.2d at 433-34. The factors are:

> [1] Whether the alleged influencer has made fraudulent representations to the testatrix;
>
> [2] whether the execution of the will was the product of hasty action;
>
> [3] whether the execution of the will was concealed from others;
>
> [4] whether the person benefited by the will was active in securing its drafting and execution;
>
> [5] whether the will as drawn was consistent or inconsistent with prior declarations and plannings of the testatrix;
>
> [6] whether the will was reasonable rather than unnatural in view of the testatrix' circumstances, attitudes, and family;
>
> [7] whether the testatrix was a person susceptible to undue influence; and

> [8] whether the testatrix and the beneficiary have been in a confidential relationship.

*Id.*

**¶9**          Cathy argues that the superior court improperly limited its analysis to the specific time period during which Mother's last will was created and executed, a so-called "point-in-time" analysis. [4] She contends that the proper analysis requires "historical and circumstantial evidence . . . be considered to determine what influences were operating at the time of execution [of the will]," which should include focusing on Mother's previous estate plans, "when the greatest [undue] influence was exerted." We conclude otherwise.

**¶10**          Our supreme court has discussed the time period relevant to determining whether a will was created by the exertion of undue influence.  In *Estate of Harber,* after noting that it was necessary "to introduce sufficient evidence to show that the testatrix' will was

---

[4] Cathy claims that our supreme court expressly rejected a "point-in-time" analysis, citing *In re Estate of Harber*, 102 Ariz. 285, 292, 428 P.2d 662, 669 (1967), and quotes the following in her opening brief:

> To require that there be direct evidence of undue influence operating on the testatrix's mind at the time she executes her will is contrary to both the law and common sense; influence that has been exerted over a period of time so as to become pervasive will not necessarily manifest itself at the time of execution.

Our supreme court, however, did not write the passage quoted in Cathy's brief.  Instead, our search reveals that the quotation is only found in the dissenting opinion by Justice Hines in *Bohlen v. Spears*, 509 S.E.2d 628, 630-31 (Ga. 1998) (Hines, J., dissenting).  And, in that case, the majority opinion of the Georgia Supreme Court stated that "a will can be invalidated only by such undue influence as operates on the testatrix's mind at the time she executes the document."  *Id*. at 630 (majority opinion) (citing *Boland v. Aycock*, 12 S.E.2d 319, 321 (Ga. 1940)).

overpowered and the will of another substituted in its stead," our supreme court found that "there [was] no indication [that Mrs. Harber] was in a physical or mental condition which rendered her susceptible to the exertion of undue influence upon her *at the time of the execution of her will.*" 102 Ariz. at 291-92, 428 P.2d at 668-69 (emphasis added); *accord In re Estate of Sherer*, 10 Ariz. App. at 35, 455 P.2d at 484 (stating that undue influence must be shown at the time the testator executes his will).

¶11 Here, the superior court stated the proper legal standard. The court noted that the question was whether a person "through his power over the mind of the testator or testatrix makes the latter's desires conform to his own, thereby overmastering the free will of the testator or testatrix." Then, in reaching its judgment, the court focused on all the evidence that was presented at trial, including events dating back to December 2005, as well as the facts related to the creation and execution of the October 2007 will.

¶12 In determining whether Mother was subject to undue influence when she created and executed her final will, the court specifically addressed the first seven *McCauley* factors, and Lori does not dispute the existence of the eighth – that she had a confidential relationship with Mother. Substantial evidence exists in the record to support the court's factual findings. As a result, we find that the superior court properly considered the correct law of undue influence, applied the facts to the law, and determined that there was no undue influence.

¶13 Cathy next claims that the superior court erred because it failed to shift the burden of proof onto Lori. She argues that the court's findings were improper because the court failed to consider circumstantial evidence and evidence regarding the participation of attorney Richard Grossman in drafting Mother's will. Had the court properly considered the evidence, Cathy argues, it would have concluded that the requirements necessary to create a presumption of undue influence were met.

¶14 The party claiming that a will is the product of undue influence has the burden of proof. *In re Estate of McCauley*, 101 Ariz. at 10, 415 P.2d at 433. A presumption of undue influence arises, however, if there is evidence of each of the following four requirements: (1) the individual had a confidential relationship with the testatrix; (2) the individual was the principal beneficiary of the will; (3) the individual was active in procuring the will; and (4) the individual was active in executing

the will.  *See* A.R.S. § 14-2712(E)(1) (West 2010),[5] *see also Mullin v. Brown*, 210 Ariz. 545, 547, ¶ 4, 115 P.3d 139, 141 (App. 2005) ("A presumption of undue influence arises when one occupies a confidential relationship with the testator and is active in preparing or procuring the execution of a will in which he or she is a principal beneficiary.").

¶15      Here, the court found "[t]here was no direct evidence that Lori Cole was active in securing the drafting or execution" of the will and therefore, the court did not apply a presumption of undue influence.  The court made that finding after hearing testimony from Nora Marsh, the attorney who drafted Mother's final will.  Marsh testified that attorney Richard Grossman contacted her and arranged for her to meet Mother to draft the final will.  She also testified that she never had any contact with Lori.  Although Grossman provided some input regarding one portion of the will, Marsh testified that Mother directed her to draft the language that resulted in Cathy being disinherited.

¶16      Although Cathy claims that the court failed to consider circumstantial evidence in making its finding, she does not cite any specific circumstantial evidence that the court failed to examine or consider.  She also argues that Grossman was present during the creation of the will and contends he was representing Lori.  However, her disagreement with the factual findings does not demonstrate that the court failed to consider the evidence.  The court heard the evidence and had to decide the credibility of the witnesses and what evidence to believe or disbelieve. *See In re Estate of Zaritsky*, 198 Ariz. 599, 601, ¶ 5, 12 P.3d 1203, 1205 (App. 2000) (stating that we give "due regard to the opportunity of the court to judge the credibility of witnesses"); *see also Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002) (stating that the trier of fact "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and

---

[5] Although § 14-2712(E)(1) did not go into effect until after Cathy filed her counter-petition, 2010 Ariz. Sess. Laws, ch. 133, § 2 (2d Reg. Sess.), the statute, entitled "Burdens relating to validity of governing instruments," codified the burdens of proof in probate matters and could be applied to the subsequent trial. *Allen v. Fisher*, 118 Ariz. 95, 96, 574 P.2d 1314, 1315 (App. 1977) (stating that "a statute relating solely to procedural law such as burden of proof and rules of evidence can be applied retroactively"). Moreover, both parties cited to the provision and neither challenges its use on appeal.

make appropriate findings"). Because it is clear that the court considered the evidence, and substantial evidence exists to support its findings, the findings are not clearly erroneous.

## II.     Vulnerable Adult

¶17      Cathy also argues that the superior court failed to apply the proper standard to her Vulnerable Adult claim, improperly focused on Mother's testamentary capacity, and ignored whether Mother was impaired. We disagree.

¶18      Generally, a Vulnerable Adult claim requires proof by a preponderance of the evidence that "[a] person who is in a position of trust and confidence to a vulnerable adult [has breached his/her duty to] use the vulnerable adult's assets solely for the benefit of the vulnerable adult and not for the benefit of the person . . . or the person's relatives." A.R.S. § 46-456(A); *accord Davis,* 211 Ariz. at 524, ¶ 20, 123 P.3d at 1161. The claim's two threshold elements are whether (1) the person is in "a position of trust and confidence" with the purported victim and (2) the purported victim is a "vulnerable adult." *Davis*, 211 Ariz. at 524, ¶ 20, 123 P.3d at 1161. Because it is undisputed that Lori was in a position of trust and confidence with respect to Mother, we turn to whether Mother was a vulnerable adult.

¶19      An adult is vulnerable if the court finds that the individual suffered from a physical or mental impairment that prevented the individual from protecting herself from "abuse, neglect or exploitation by others." A.R.S. § 46-451(A)(9); *Davis,* 211 Ariz. at 524-25, ¶ 21, 123 P.3d at 1161-62. Here, Mother's two primary care physicians, Dr. Cathie Dunal and Dr. Matthew Hummel, testified as to Mother's physical health and opined that, although Mother suffered from chronic physical issues, her conditions were manageable. Although Cathy claims that the court failed to consider evidence of Mother's physical limitations, the final judgment undermines the argument because it reflects that the court considered Mother's "vision deficits."

¶20      The court also heard testimony regarding Mother's mental abilities from Dr. Dunal, Dr. Hummel, and Dr. Kreiner, a psychiatrist. Each doctor testified that Mother was in control of her mental faculties and capable of making her own decisions. Based on the evidence, and guided by § 46-456, the court determined that Mother was not a vulnerable adult because "[a]t no material time was [Mother] unable to protect herself from abuse, neglect, or exploitation by others because of a

physical or mental impairment." *See Davis*, 211 Ariz. at 527, ¶ 31, 123 P.3d at 1164 (stating that a finding that one is a vulnerable adult requires that the individual's impairment be "to such an extent that [the individual] was unable to protect herself if targeted for abuse, neglect, or exploitation").

**¶21** The court also considered whether Mother had testamentary capacity at the time her final will was created and executed. The final judgment, however, clearly demonstrates that the court separately considered whether § 46-456 was violated. Consequently, we find that the court applied the proper legal standard and there was substantial evidence that supported the court's finding that Mother was not a vulnerable adult within the meaning of the statute.

**¶22** Cathy also argues that the superior court: (1) improperly limited the Vulnerable Adult claim to the time period that Mother was a resident of Arizona; (2) erred by incorrectly interpreting the Vulnerable Adult statute to find that she lacked standing to bring the claim; (3) failed to make necessary factual findings regarding whether Lori held a position of trust and confidence; and (4) erred by making additional factual findings that were contrary to the Vulnerable Adult statute. Because we find that the court properly applied the Vulnerable Adult statute, we do not address Cathy's additional arguments. *See Glaze v. Marcus*, 151 Ariz. 538, 540, 729 P.2d 342, 344 (App. 1986) (stating that this court will uphold the trial court's decision if correct for any reason). Accordingly, we find no error.

## III. Evidentiary Issues

**¶23** Cathy also contends that various evidentiary mistakes occurred during the course of trial. We review the "trial court's ruling regarding admission or exclusion of evidence . . . [for] a clear abuse of discretion and resulting prejudice." *Gordon v. Liguori*, 182 Ariz. 232, 235, 895 P.2d 523, 526 (App. 1995). "The improper admission of evidence is not reversible error if the [fact-finder] would have reached the same verdict without the evidence." *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 88, ¶ 7, 977 P.2d 807, 810 (App. 1998). Put differently, the exclusion of admissible evidence "is not reversible error if the verdict would have been warranted even if the evidence had been admitted and its admission probably would not have changed the result." *Schwartz v. Farmers Ins. Co. of Ariz.*, 166 Ariz. 33, 36, 800 P.2d 20, 23 (App. 1990).

### a. Hearsay

¶24         Cathy argues that the superior court erred by admitting and relying on hearsay accounts of statements Mother made to others. Cathy claims that the court admitted an overwhelming amount of hearsay evidence and points to eleven specific occasions, including the admission of a tape recording, which all generally refer to Mother and Cathy's strained relationship.

¶25         Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Ariz. R. Evid. 801(c). Evidence offered to demonstrate a party's state of mind is non-hearsay, however, as it is not offered to prove the truth of the matter asserted. *State v. Ramirez*, 116 Ariz. 259, 266, 569 P.2d 201, 208 (1977).

¶26         We first note that, in response to a hearsay objection by Cathy, the court stated "[a]nd these statements, I take them not necessarily offered to prove the underlying content or the truth of the matter contained. And therefore they're not hearsay." Furthermore, Arizona Rule of Evidence ("Rule") 803(3) provides a hearsay exception for a "statement of memory or belief to prove the fact remembered or believed [if] it relates to the validity or terms of the declarant's will." *Accord In re Estate of Pouser*, 193 Ariz. 574, 580, ¶ 15, 975 P.2d 704, 710 (1999). Because we presume that the "court considered only competent evidence in arriving at its decision," *Kirby v. Rosell,* 133 Ariz. 42, 46, 648 P.2d 1048, 1052 (App. 1982), we therefore will not assume that it considered evidence for improper hearsay purposes. Accordingly, we find that the admission of the statements was not an abuse of discretion.

¶27         Even if some of the challenged statements constituted hearsay, we find no prejudice, and therefore no reversible error. Non-hearsay evidence detailing Mother's difficult relationship with Cathy was abundant. Cathy admitted in an email to the family attorney in April 2006, that "I am at a place in my life where I am putting my welfare first" and in regards to her relationship with Mother that she "expect[ed] to be blamed and disparaged, and most likely disinherited." Later, in June 2006, Mother's attorney sent a letter to Cathy stating that Mother wished to sever their financial and personal relationship. The letter provided for various personal property matters and requested that Cathy have no further contact with Mother. In response, Cathy, through her counsel, delivered a written "counter-settlement proposal . . . to settle the familial divorce instigated by [Mother]." Cathy proposed that Mother: (1)

immediately deed a home and the personal property contained therein to Cathy; (2) distribute, "in a form and manner acceptable to Cathy," $375,000 to each of Cathy's two sons; and (3) distribute, "in a form and manner acceptable to Cathy," $250,000 to Cathy. In exchange, Cathy would "agree not to raise any issues as to [Mother's] abilities to handle her affairs and health care issues." Cathy subsequently followed up this proposal with the following message from her attorney, "[s]o that there is no misunderstanding, in the event [Mother] refuses to agree to a settlement acceptable to [Cathy], [Cathy] is considering currently raising formally [sic] questions about [Mother's] abilities to handle her affairs and health care issues." After Mother refused to agree to Cathy's demands, Cathy filed a petition for appointment of guardianship over Mother in July 2007. In her affidavit attached to the petition, Cathy admitted that in May 2006 she was concerned that Mother may be suffering from dementia. The admission that Cathy tried in May 2006 to negotiate property matters with Mother even though she suspected Mother's mental health was impaired, undermines Cathy's stated concern for Mother. After the petition for guardianship was dismissed, Cathy filed another suit against Mother. Shortly after a failed attempt to serve Mother, Mother moved from Illinois to Arizona under an assumed name. Given the wealth of plainly admissible evidence that the relationship between Cathy and Mother was strained, the court's admission of the other evidence claimed to be hearsay did not result in any prejudice.

### b. Character Evidence

**¶28** Cathy argues that the court erred by excluding evidence regarding Lori's character for untruthfulness. She cites ten instances where the court excluded evidence regarding Lori's purported character for untruthfulness, related to representations concerning her business dealings and also testimony by an expert forensic psychiatrist.

**¶29** A witness's character for untruthfulness may be established by reputation or opinion evidence. Ariz. R. Evid. 608(a). Specific acts regarding a witness's character for untruthfulness may be presented on cross-examination after a court determines the probative value of the evidence. Ariz. R. Evid. 608(b). As relevant here, however, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." *Id.* Further, the court may not admit irrelevant evidence and may exclude relevant evidence if its probative value is substantially outweighed by the danger of such factors as unfair prejudice, undue

delay, wasting time, or needless presentation of cumulative evidence. Ariz. R. Evid. 402, 403.

**¶30**        At trial, when Cathy attempted to introduce evidence regarding Lori's business dealings, the court found the evidence was not probative, stating it was "so far off the subject" and also that Cathy did not have the time to present the evidence.[6]   Cathy also failed to demonstrate that Lori's past business dealings were relevant and related to Lori's interaction with her family.   Therefore, and after considering Rules 401, 403, and 608, we find that the ruling was not an abuse of discretion.

### c.   Admissibility of Recording

**¶31**        Cathy argues that a recording made by Mother should not have been admitted because it (1) lacked the proper foundation and authentication and (2) would have been barred by the Illinois Eavesdropping Act.

**¶32**        Rule 901 "governs the sufficiency of an evidentiary foundation" and requires that "authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *State v. Lavers*, 168 Ariz. 376, 386, 814 P.2d 333, 343 (1991) (citing Ariz. R. Evid. 901(a)).   The requirement for foundation may be satisfied based on an opinion identifying a person's voice.   Ariz. R. Evid. 901(b)(5).

**¶33**        Here, Mother secretly tape-recorded a meeting between herself and Sherry Fox, the guardian ad litem assigned to her during the Illinois guardianship proceeding.   Cathy contends that the recording lacked foundation because no party to the recording was able to lay foundation.   However, at trial, Fox identified both her voice and Mother's voice on the recording.   Because Fox identified the voices, the superior court did not abuse its discretion in admitting the recording over an

---

[6] The superior court had set time limits on witness testimony in a pretrial order.   Neither party objected to the time limits.   Because Cathy did not request additional time to question the witness, she waived the issue on appeal.   *See Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, 434 n.8, ¶ 39, 167 P.3d 111, 121 n.8 (App. 2007) (noting that arguments not raised at the trial court are waived on appeal).

objection as to foundation. Fox also testified there was a possibility that the recording was altered. The possibility of alteration, however, only goes to the weight to be given to the evidence. *See Lavers*, 168 Ariz. at 386, 814 P.2d at 343 (stating that Rule 901 only requires evidence on which a fact-finder could reasonably determine authenticity); *see also State v. King*, 213 Ariz. 632, 640, 146 P.3d 1274, 1282 (App. 2006) (stating that "discrepancies in the evidence affect the weight of the evidence, not its admissibility"). Based on the record, we find no abuse of discretion.

**¶34** Cathy also contends that the recording is barred because it violates the Illinois Eavesdropping Act, [720] ILCS § 5/14-1 [to 5/14-9].[7] Cathy argues that the superior court was obligated to extend full faith and credit to the statute and because it prohibits the use of a recording in a civil proceeding without the consent of all the parties to the recording, it may not be admitted.

**¶35** In general, rules of evidence are governed by the law of the forum state. *See Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 206, 841 P.2d 198, 201 (1992) (citing Restatement (Second) of Conflict of Laws § 122 (1971) ("Procedural matters are generally governed by the law of the forum state.")); *see also State v. Superior Court,* 154 Ariz. 574, 576, 744 P.2d 675, 677 (1987) ("[R]ules of evidence are procedural in nature."). Furthermore, the "Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722 (1988) (quoting *Pac. Emp'rs Ins. Co. v. Indus. Accident Comm'n*, 306 U.S. 493 (1939)).

**¶36** Rule 402 governs the admissibility of relevant evidence in an Arizona judicial proceeding. Rule 402 states that all relevant evidence is admissible unless otherwise provided by "the United States or Arizona Constitution; an applicable statute; these rules; or other rules prescribed by the Supreme Court." Ariz. R. Evid. 402. Cathy did not provide the superior court or this court with any Arizona statute, rule or case law that would exclude the recording. As a result, we find that the superior court properly admitted the recording.

---

[7] Cathy cites to 735 ILCS § 5/14-1 et seq. That citation, however, does not correspond with the Illinois Eavesdropping statute. We therefore understand her argument to reference 720 ILCS 5/14-1 to 5/14-9.

### d. Expert Witness Testimony

¶37        Cathy argues that the superior court improperly excluded her expert witness, a neuropsychologist, from hearing trial testimony and admitted unqualified expert opinion testimony from Dr. Hummel. We disagree.

¶38        Rule 615 requires the court, upon request, to exclude witnesses from hearing other witnesses' testimony. Rule 615, however, does not authorize excluding:

> **(a)** a party who is a natural person;
>
> **(b)** an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney;
>
> **(c)** a person whose presence a party shows to be essential to presenting the party's claim or defense;
>
> **(d)** a person authorized by statute to be present; or
>
> **(e)** a victim of crime, as defined by applicable law, who wishes to be present during proceedings against the defendant.

Ariz. R. Evid. 615.

¶39        The superior court excluded all non-party witnesses from the trial. The court, however, noted that it would entertain motions requesting an exception to the ruling. During the proceeding, Cathy unsuccessfully sought permission to tell her expert, before taking the stand, about testimony by Dr. Hummel concerning vulnerability that she believed was undisclosed expert testimony. She was not precluded, however, from disclosing Dr. Hummel's testimony to her expert witness during her examination of the expert and asking for her reaction to Dr. Hummel's testimony.

¶40 Moreover, Cathy has not demonstrated that her expert falls within any of the five exceptions to the exclusionary rule. She cites *McGuire v. Caterpillar Tractor Co.*, 151 Ariz. 420, 425, 728 P.2d 290, 295 (App. 1986), for the proposition that an expert witness may consider the testimony of other fact witnesses, even if Rule 615 had been invoked. In *McGuire*, this court cited Arizona Law of Evidence § 64, which states that "one party's expert might be allowed to hear the other party's expert testify." Morris K. Udall & Joseph M. Livermore, Arizona Law of Evidence § 64 (2d ed. 1982). Although a superior court has the discretion to allow one expert to listen to another testify, we find no abuse of discretion given the fact that Cathy was free to tell Dr. Wilson, during Dr. Wilson's time on the stand, about Dr. Hummel's testimony and get her opinion given all the other evidence.

¶41 Cathy next argues that the court erred by questioning Dr. Hummel. We find Cathy has waived the argument.

¶42 On appeal, an evidentiary issue is waived unless a party makes a timely objection at trial. Ariz. R. Evid. 103(a)(1)(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and . . . [the party] timely objects . . . and states the specific ground, unless it was apparent from the context."); *Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 286-87, ¶ 9, 9 P.3d 314, 317-18 (2000) ("An objection to proffered testimony must be made either prior to or at the time it is given, and failure to do so constitutes a waiver."). Here, the following exchange occurred at trial:

> THE COURT: During the period that you saw Shirley Cole, do you believe she was vulnerable; by that I mean unable to protect herself from abuse, neglect, or exploitation by others in connection with any physical or mental impairment?
>
> [DR. HUMMEL]: No.
>
> THE COURT: Do you believe Shirley was impaired by reason of mental illness, memory deficit, mental disorder, physical illness, or disability to the extent that she lacked sufficient understanding or capacity to make or

communicate responsible decisions concerning
her person or affairs?

THE WITNESS:  No.

**¶43**        Cathy failed to object during the questioning or immediately afterwards.[8]  She contends, however, that she was unable to object to the questions because the court prohibited her attorneys from consulting one another and "lodg[ing] a proper objection."  After the court concluded its questioning of the witness, however, the following exchange occurred between the court and Cathy's attorneys:

> THE COURT:  Do you have any questions you
> want to ask in connection with the questions I
> asked, Mr. Hargrove?
>
> MR. HARGROVE:  Yes.
>
> MR. CHANEN:  Could we have a moment,
> Your Honor?
>
> THE COURT:  Think he can't handle it alone?
>
> MR. CHANEN:  It caught us by surprise that
> you asked [Dr. Hummel] that question.
>
> THE COURT:  I may ask a lot of questions.  I
> do that and I will do that.
>
> MR. CHANEN:  I wasn't —
>
> THE COURT:  Go ahead.  If you have any
> questions, Mr. Hargrove, you just go right
> ahead.

---

[8] Rule 704(a) provides that an opinion by an expert witness "is not objectionable just because it embraces an ultimate issue."  Ariz. R. Evid. 704(a).

After the exchange, Cathy, by her lawyer, questioned Dr. Hummel regarding his knowledge of the legal standard for determining a vulnerable adult. Given that Cathy could have then objected to the court's questions, the record does not support her contention that the court precluded any objection. As a result, the issue is waived on appeal.

**¶44** Even if the issue was not waived, we find no error because Rule 704 allows an expert to give an opinion on an ultimate issue if it will assist the trier of fact. *Webb v. Omni Block, Inc.*, 216 Ariz. 349, 353, ¶ 13, 166 P.3d 140, 144 (App. 2007). Because the judge asked the question, we presume it was designed to help him decide one of the many issues presented during the course of the trial.

**¶45** Moreover, we find no prejudice by the questions or Dr. Hummel's testimony because the record otherwise supports the court's finding that Mother was not a vulnerable adult. In addition to Dr. Hummel, two other treating physicians testified concerning Mother's mental and physical conditions. Dr. Dunal, Mother's primary care physician, testified that, although Mother suffered from various chronic medical conditions, the conditions were controllable. She further testified that Mother's mental status was "exceedingly high functioning." In addition, Mother's psychiatrist, Dr. Kreiner, testified that, based on her evaluations of Mother, she lacked any mental or cognitive impairment. Therefore, we find no reversible error in the admission of Dr. Hummel's testimony.

## ATTORNEYS' FEES

**¶46** Lori requests attorneys' fees on appeal pursuant to A.R.S. § 14-1105(A) and (C). Subsection (A) allows a court to award a just amount of fees and costs under the circumstances upon a finding of unreasonable conduct. A.R.S. § 14-1105(A). Subsection (C) allows the court to consider other remedies to mitigate any financial burden on the decedent's estate "as a result of unjustified court proceedings." A.R.S. § 14-1105(C). Although Cathy's opening brief misquoted Arizona law, *supra* ¶ 9 n.4, this court caught the misattribution. As a result, and in the exercise of our discretion, we decline Lori's request for fees, but will award her costs on appeal upon compliance with ARCAP 21.

## CONCLUSION

¶47        Based on the foregoing, we affirm the judgment.

