684 P.2d 159

**Kenneth C. KUHNKE, Plaintiff-Appellee,**

v.

**TEXTRON, INC., a foreign corporation, Defendant-Appellant.**

### No. 1 CA–CIV 6086.

Court of Appeals of Arizona,
Division 1, Department D.

Jan. 19, 1984.

Reconsideration Denied Feb. 29, 1984.

Review Denied June 5, 1984.

Ely, Bettini & Ulman by Herbert L. Ely, Phoenix, for plaintiff-appellee.

Black, Robertshaw, Frederick, Copple & Wright, P.C. by Richard A. Black, Phoenix, for defendant-appellant.

## OPINION

GREER, Judge.

In this appeal from a jury award of $50,000 in favor of Kenneth Kuhnke (Kuhnke) on a theory of strict liability in tort, the defendant-appellant Textron, Inc. (Textron) raises a number of issues. We hold that the trial court improperly granted Kuhnke's motion for a directed verdict on the issue of substantial change and therefore reverse and remand this matter for a new trial. The record reveals that Kuhnke was an experienced "rough carpenter," working full time for Diplomat Homes in Phoenix. On December 21, 1977, Kuhnke and a co-worker were on the roof of a house being constructed by Diplomat Homes. Kuhnke was using a power saw to cut a board when the saw bucked out of the wood and slashed his wrist, causing a serious injury. Kuhnke underwent four surgeries before being released for "light work" in July, 1979.

Kuhnke filed an action predicated on a theory of strict liability against Textron, the manufacturer of the gasoline generator that powered the saw he was using. Kuhnke's expert, David "Chief" Lanpher, testified that he inspected the generator on December 22, 1977, and concluded that a short in the generator caused a loss, and then a surge of power in the saw. Textron's expert subsequently testified that an interruption in the saw's power supply could cause the saw to buck.

Chief Lanpher further testified that the short in the generator was caused when the idle control board of the generator, a mechanism which helps control the generator's speed, came unfastened from the generator wall and grounded out on the bottom of the generator. The evidence shows that, when manufactured, the control board was fastened to the wall of the generator with three metal studs.

Chief Lanpher also testified that when the generator was in operation it would cause the internal parts, including the control board, to vibrate. It is uncontested that Textron did not use any lock washers or any other locking device to prevent the screws fastening the control board to the wall from vibrating loose. The Chief gave his opinion that, although the generator was less than six months old, the vibrations could have caused the unsecured screws to come loose, allowing the control board to fall to the bottom of the control box. He further testified that, in his opinion, the failure to use lock washers or a locking fluid was a manufacturing defect.

During the course of trial Textron's attorney theorized that someone else had entered the control module's section of the generator and replaced the factory mounting system with an alternative system. This theory was based upon Chief Lanpher's testimony which, according to Textron, indicated that the mounting system he discovered when he repaired the generator was different from the one listed on the manufacturer's parts list. Specifically, Textron maintains that the Chief found an unthreaded spacer which was used in conjunction with a nut and bolt rather than the manufacturer's supplied threaded spacer used in conjunction with screws.

The testimony on this factual issue is equivocal at best. Initially, during trial, the Chief testified that in his opinion no one else had worked on the control box section of the generator between the time of manufacture and his initial inspection. He testified that when he first inspected the generator he thought it looked brand new and commented as much to a boy next to him.

His belief was based on the condition of the machine and the fact that the paint had not been broken around any of the eight screws which secured the cover to the control box section of the generator that he worked on. However, this part of the Chief's testimony was impeached with a statement that Chief made to appellant's investigator one month after the repair and with the Chief's deposition testimony. On both occasions he admitted he could not tell if anybody had previously been into the control box section of the generator. There was also testimony that previous repairs had been made to other sections of the generator. However, Textron failed to introduce any direct evidence to prove that someone had actually entered the control box section of the generator.

Another point of controversy on this issue is that at various points of his testimony Chief stated that a nut and bolt system was used to fasten the control module. However, when pressed on this issue the Chief was unable to say for certain whether "a bolt, or a screw, or whatever" was used on the unit he repaired. Again, Textron's position on this point is that the inference to be drawn from this testimony is that someone substituted a nut and bolt fastening device for the screw device used by the manufacturer. Appellant counters this argument by maintaining that the Chief had a lapse of memory and simply could not remember whether a nut and bolt system or screw system was used on the generator he repaired.

■ The legal significance of this issue is that if there was evidence that a change was made to the fastening device Textron would have been entitled to argue that such a change was a substantial alteration relieving it of any liability. Arizona law on strict liability follows the American Law Institute's position. *O.S. Stapely Co. v. Miller*, 103 Ariz. 556, 447 P.2d 248 (1968). Restatement of the Law of Torts, (Second) (1965) provides in § 402A as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property

is subject to physical harm thereby caused to the ultimate user or consumer, or to his property, if:

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without *substantial change* in the condition in which it is sold. [emphasis added]

In *O.S. Stapley Co. v. Miller*, our supreme court reversed the trial court's judgment directing a verdict on the issue of strict liability in favor of the plaintiff because the product failed to reach the user "without some change which may have been substantial." *Id.* at 560, 447 P.2d at 252. As the court recognized in that case by its citation to the comments of the Restatement Second, the law of substantial change is not well developed. Although it is clear that not all changes to a product will relieve the manufacturer of liability, the cases are not clear on exactly what type of change constitutes a "substantial change." *See, e.g., Union Supply Co. v. Pust*, 583 P.2d 276, 196 Colo. 162 (1978) (small changes, minor processing, or even substantial changes not affecting a pre-existing design defect will not relieve a manufacturer of liability).

A number of courts discuss the concept of substantial change in terms of intervening superseding cause. In discussing § 402A, the Third Circuit Court of Appeals upheld the lower court's finding of liability and stated: "It is our opinion, too, that the purported 'changes' in the piler by J. & L. employees were not intervening superseding causes relieving appellants of liability." *Greco v. Bucciconi Engineering Co.*, 407 F.2d 87, 91 (3d Cir.1969); *see also Schreffler v. Birdsboro Corp.*, 490 F.2d 1148 (3d Cir.1974).

■ We agree with the federal district court's assessment in *Southwire Co. v. Beloit Eastern Corp.*, 370 F.Supp. 842, 857 (E.D.Penn.1974), that such an approach implies that a plaintiff's failure to negate substantial change is the same as saying the plaintiff failed to prove proximate cause, because they failed to negate a break in the causal connection between the original defect and the ultimate injury. Our supreme court implied that it would approve of such an approach in *O.S. Stapley Co. v. Miller*, when it stated: "It is clearly apparent that the product failed to reach the user without some change which may have been substantial, and it is conceivable that such alteration may have been the proximate cause of the accident and the plaintiff's injuries." 103 Ariz. at 560, 447 P.2d at 252.

■ Kuhnke relies on *Southwire Co. v. Beloit Eastern Corp.* in arguing that Textron failed to meet its burden of introducing sufficient evidence to justify a reasonable person finding substantial change. His reliance is misplaced. We agree with the holding in *Southwire* that once a defendant comes forward with some evidence of substantial change, the burden is on the plaintiff to show no substantial change. The court's reasoning on this point is instructive:

To be sure, there are reasons for requiring the defendant to carry the burden of coming forward and alleging a substantial change. In many cases, the alleged substantial change is perceived only by the defendant who should, therefore, have to allege it and maintain the burden of going forward with the evidence on the point. The plaintiff is accordingly put on notice to try to prove no substantial changes were made. And as a general rule, rather than requiring a plaintiff to negate an infinite number of possible changes, it seems more reasonable and in keeping with our adversary process to expect the defendant to allege the substantial changes he expects the plaintiff to try to disprove. But once the defendant has come forward, we believe that the burden of proof (or again more precisely, the risk of non-persuasion) must remain with the plaintiff; if the scales remain in equilibrium on the point, plaintiff is the loser.

*Id.* at 857–58.

■ In determining whether the parties met their respective burdens in the instant

case, it is important to keep in mind that we are reviewing a directed verdict on these issues. A directed verdict or partial directed verdict may be granted only where there is no evidence introduced that "would justify a reasonable person returning a verdict for the opposing party." *Rocky Mountain Fire and Casualty Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 291, 640 P.2d 851, 853 (1982); *Matson v. Naifeh*, 122 Ariz. 360, 595 P.2d 38 (1979). In discussing appellate review of a directed verdict, our supreme court has stated:

> It is well settled that a motion for a directed verdict admits the truth of all competent evidence introduced by the party opposing the motion, including all reasonable inferences to be drawn therefrom. Such evidence must be viewed most strongly against the movant and most favorably for the opposition. If, considering all the facts and circumstances, there is a reasonable likelihood that reasonable men may reach different conclusions, the question of fact in issue is to be decided by the jury.

*Reader v. General Motors Corp.*, 107 Ariz. 149, 154, 483 P.2d 1388, 1393 (1971); *accord Matson v. Naifeh*, 122 Ariz. 360, 595 P.2d 38 (1979).

■ In the instant case, there can be no question that Textron came forward with evidence and that Kuhnke was put on notice of the possibility of a substantial change. If the unthreaded spacer system was not a part affixed by the manufacturer, it necessarily follows that someone modified a critical part of the machine. This assumes, of course, that the manufacturer never deviates from the parts list when assembling the machine. While anyone who had tried to assemble a child's toy on Christmas Eve might question this assumption, we think Textron shifted the burden of proving no substantial change to Kuhnke. The more difficult issue is whether Kuhnke presented sufficient evidence to negate that change. Or, put another way, is there a reasonable likelihood that the jury might have believed that someone had entered the control box section of the gen-

erator and made a substantial change or modification to the fastening device.

As stated previously, the evidence on this point is conflicting. At trial, the Chief testified that in his opinion no one else had been in the control box section of the generator. However, Textron impeached this part of the Chief's testimony. On the issue of what type of fastening device the generator contained, the Chief's testimony was also varied. However, at various points of his testimony he testified that the system he worked on had an unthreaded spacer-nut and bolt fastening device rather than the factory installed threaded spacer and screw device.

■ The credibility of a witness' testimony and the weight it should be given are issues particularly within the province of the jury. *Harris v. Murch*, 18 Ariz.App. 466, 503 P.2d 821 (1972). Here, the jury might have believed the Chief's deposition testimony that he could not tell if anyone had previously worked on the control box section of the generator rather than his trial testimony. With this in mind, and considering the fact that the unthreaded spacer-nut and bolt system found by the Chief was not a factor part, we believe it is reasonably likely that the jury would also have inferred that someone had replaced the factory installed fastening device with a nut and bolt device. And, it is clear from the Chief's testimony on cross-examination that he believed whoever placed the fastening device in the system that he worked on caused the accident. Thus, there was also reasonable evidence from which the jury could have concluded that such a significant modification to the fastening device was a "substantial change" to the generator which amounted to a superseding intervening cause of the plaintiff's injury. Or, again put another way, that the proximate cause of the plaintiff's injury was the defectively installed nut and bolt fastening device rather than the manufacturer's installed fastening device. Therefore, the trial court committed reversible error by directing a partial verdict on the issue of substantial change.

In light of our conclusion on this issue, it is obviously also error for the trial court to have deleted that part of the defendant's requested jury instruction number one which pertained to the law of substantial change. If this matter is retried under similar evidence it will be necessary for the jury to be given an instruction on substantial change.

## II.

## DIRECTED VERDICT FOR TEXTRON

A.  Textron's motion for directed verdict.

For similar reasons, we decline to accept Textron's argument that the trial court should have directed a verdict or judgment notwithstanding a verdict because there was no evidence that any defect in the generator it manufactured was the proximate cause of Kuhnke's injuries. As discussed above, the evidence on this issue was in conflict. We believe it reasonably likely that the jury could have concluded that the generator was defectively manufactured and that the defect was a proximate cause of the appellant's injuries.

■ Textron also sought a directed verdict on the grounds that there was no showing that any short in the generator caused a power interruption of sufficient length of time to affect the speed of the saw. We disagree. Although the Chief was unable to testify as to the length of time the generator would short out on any particular occasion, there was sufficient evidence from which the jury could reasonably conclude that the shorts caused the generator to slow and that this in turn resulted in the saw jumping out of the wood. For instance, in addition to the Chief's testimony, Kuhnke testified that the saw slowed immediately before the accident occurred. And, one of Kuhnke's co-workers testified that the generator had also caused the saw to buck on him and other co-workers.

B.  Sufficiency of the evidence.

■ Textron also maintains that there is not sufficient evidence from which the jury could conclude that a defect in the generator, rather than other possible causes, such as wet or knotty wood, was the proximate cause of the injury. We disagree. As stated above, there was evidence that similar incidents occurred with other workers on other pieces of wood. This evidence is sufficient to require submission of the issue to the jury.

## III.

## JURY INSTRUCTION

Because this matter is remanded for a new trial, we must reach one final issue raised on appeal. Appellant objects to the second sentence of the following jury instruction given by the court:

A defect causes an injury if it helps produce the injury and if the injury would not have happened without the defect. A defendant manufacturer may not avoid liability claiming some other person helped cause the injury.

Textron maintains this is an incorrect statement of the law as it applies to the case.

■ The test for the propriety of a jury instruction is whether, when the instructions given to the jury are considered as a whole, the challenged instruction misled the jury as to the proper rule of law. *Evans v. Pickett,* 102 Ariz. 393, 430 P.2d 413 (1967); *Yellow Cab Co. of Phoenix v. Green,* 16 Ariz.App. 485, 494 P.2d 385 (1972).

As appellant points out, this instruction was approved of in *Moorer v. Clayton Manufacturing Corp.,* 128 Ariz. 565, 627 P.2d 716 (App.1981). However, that case presents facts distinguishable from the instant case. In *Moorer,* the defendant manufacturer attempted to shift blame for the plaintiff's injuries by contending that the plaintiff's employer failed to properly train the plaintiff in the use of the defective product. This prompted the plaintiff to request the following instruction:

More than one person may be liable for causing an injury. A defendant may not avoid liability by claiming that some other person helped cause the injury.

*Id.* at 569, 627 P.2d at 720. In approving the instruction the court stated that, "[p]roduct defectiveness can be a proximate cause concurrently and in combination with other causes." *Id.*

This was a correct statement of the law. However, there were facts which supported the giving of that instruction in the *Moorer* case. The facts of this case do not support the instruction. The risk in the instant case is that the jury will believe that Textron is not relieved of liability even if a third party substantially changed the fastening method of the module control device. This, of course, would be an incorrect statement of the law and would therefore render the instruction improper. Thus, we caution the trial court against the use of such an instruction unless evidence similar to that in *Moorer* is presented.

For the foregoing reasons, the judgment of the trial court is reversed and this matter is remanded for further proceedings consistent with this opinion. ·

KLEINSCHMIDT, P.J., and JACOBSON, J., concur.