728 P.2d 290

Steve McGUIRE, a single man,
Plaintiff/Appellant,

v.

CATERPILLAR TRACTOR COMPANY,
a California corporation,
Defendant/Appellee.

No. 2 CA–CIV 5481.

Court of Appeals of Arizona,
Division 2, Department A.

May 28, 1986.
Reconsideration Denied July 16, 1986.
Review Denied Nov. 4, 1986.

Burch & Cracchiolo, P.A. by Daniel Cracchiolo, Daryl Manhart and Ian Neale, Phoenix, for plaintiff/appellant.

Fennemore, Craig, von Ammon, Udall & Powers, P.C. by Silas H. Shultz, Timothy Berg, Cathy A. Piha and Rosemary J. Shockman, Phoenix, for defendant/appellee.

FERNANDEZ, Judge.

Appellant Steve McGuire was severely burned on May 29, 1979, while he was operating a Caterpillar 988 front-end loader. His action against the manufacturer, Caterpillar Tractor Company (the only defendant), was tried to a jury on a strict liability theory of defective design in the routing of the main hydraulic hose, and the jury found for McGuire in the amount of $650,000. The court granted Caterpillar's motion for judgment notwithstanding the verdict as well as an alternative motion for new trial.

On appeal McGuire contends 1) the court erred in granting judgment n.o.v., 2) the court erred in alternatively granting Caterpillar a new trial, and 3) the court committed other errors during the trial. We agree that the court erred in granting the judgment n.o.v., affirm the ruling granting a new trial and find that no reversible errors were committed during trial.

The loader was manufactured in November of 1971 and delivered to McGuire's employer, Union Rock and Materials Corporation, in January 1972. Union Rock purchased the loader without either a firewall or canopy to separate the operator from the engine area and without a seat belt. The loader is a large earth-moving machine with a hydraulically-powered steering system, brakes and bucket. The hydraulic system consists of a hydraulic pump, several hydraulic hose assemblies and various attachments.

On the date of the accident the main hydraulic hose (hereafter "hose") suddenly ruptured, and the hydraulic fluid ignited, causing McGuire's injuries. The hose is a composite of a rubber compound and sever-

al separate layers of steel wire. The end of the hose nearest the operator is mounted by a 90–degree stem fitting on the pump which operates the hydraulic system. The end away from the operator is mounted by a 67½–degree stem fitting on the junction block, which is located in the lower portion of the engine area. The hose is about five-and-a-half feet long and is routed along the timing gear housing area. The hose burst at the point where it crossed the timing gear housing because contact with the housing had caused a hole in it.

In February of 1972 Caterpillar had issued a change order adding two inches to the length of the hose. The accident hose had been replaced in March of 1975 by a hose fabricated by Empire Machinery Company, an authorized dealer for Caterpillar. Empire also sold two stem fittings to Union Rock at the same time. Later it was learned that, instead of the 67½–degree stem fitting, a 45–degree stem fitting had been substituted. Except for this fitting, the replacement hose complied with the change order.

### Granting of Judgment N.O.V.

McGuire's action initially was based on negligence and strict liability theories of a defective seat belt, the lack of a firewall or canopy separating the operator from the engine area, and the defective design in the routing of the main hydraulic hose. Caterpillar's motion for directed verdict was granted as to the defective seat belt and lack of firewall theories. The court submitted the case to the jury on the single question of whether the design of the hose routing was defective.

Arizona has adopted Restatement (Second) of Torts § 402A (1965) on strict liability, which reads as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

. . . .

(b) it is expected to and does reach the user or consumer without *substantial change* in the condition in which it is sold." (Emphasis added.)

See also *O.S. Stapley Co. v. Miller*, 103 Ariz. 556, 447 P.2d 248 (1968). Caterpillar argues that the use of the 45–degree stem fitting instead of the 67½–degree fitting was a substantial change which relieved it of any liability. The cases are not clear as to exactly what constitutes a substantial change. *Kuhnke v. Textron, Inc.*, 140 Ariz. 587, 684 P.2d 159 (App.1984). That fact is also recognized in comment p to § 402A. In *Kuhnke*, Division One of this court followed the approach of other jurisdictions which analyze the concept of substantial change in terms of an intervening superseding cause and adopted the district court's assessment in *Southwire Co. v. Beloit Eastern Corp.*, 370 F.Supp. 842 (E.D. Penn.1974), that "such an approach implies that a plaintiff's failure to negate substantial change is the same as saying that plaintiff failed to prove proximate cause, because they [sic] failed to negate a break in the causal connection between the original defect and the ultimate injury." 140 Ariz. at 590, 684 P.2d at 162. The court found implicit approval of this approach in *O.S. Stapley Co.*, where our supreme court said, "[i]t is clearly apparent that the product failed to reach the user without some change which may have been substantial, and it is conceivable that such alteration may have been the proximate cause of the accident and of the plaintiff's injuries." 103 Ariz. at 560, 447 P.2d at 252. Division One held in *Kuhnke* that "once a defendant comes forward with some evidence of substantial change, the burden is on the plaintiff to show no substantial change," 140 Ariz. at 590, 684 P.2d at 162, and if he fails, plaintiff loses.

Here there was no question that a change had been made, and both parties' experts testified that the change resulted in less clearance for the hose. However, McGuire's expert testified that it was irrelevant whether a 45–degree fitting or a 67½–degree fitting was used because the hose could rub against the housing with either,

which meant it was a defective design. We find that McGuire's expert's opinion was sufficient evidence that the change was not the proximate cause of injury so as to require submission of the issue to the jury. A motion for judgment notwithstanding the verdict is "a renewal of [a] motion for an instructed verdict, and is designed to permit the trial court, after more mature deliberation, to reverse its ruling in denying the motion for an instructed verdict." *In re Schade's Estate*, 87 Ariz. 341, 348, 351 P.2d 173, 178 (1960). A motion for judgment n.o.v. is properly granted when the evidence would not permit a reasonable person to reach the verdict returned by the jury. *Lerner v. Brettschneider*, 123 Ariz. 152, 598 P.2d 515 (App.1979); *Huggins v. Deinhard*, 127 Ariz. 358, 621 P.2d 45 (App. 1980). Here the trial court, in denying Caterpillar's motion for directed verdict, said "I believe that even if Caterpillar's design and instructions were followed to the letter there was still a defect." He later changed his mind. We find that his initial decision was the correct one.

Caterpillar argued to the jury that the improper fitting forced the hose into the housing, that installation instructions were not followed, that preventive maintenance and inspection should have disclosed the rubbing of the hose (after the new hose was installed the machine was in the shop about 50 times prior to the accident), that the four-year period between installation of the hose and the accident should have resulted in detection of the problem, that Caterpillar was not responsible for its dealer providing the wrong part, that 45–degree stem fittings are not used anywhere on this loader, and that the machine had undergone a substantial change since it left the factory. However, the trier of fact ruled against Caterpillar on all these issues.

Because McGuire's evidence was that the design was defective regardless of the stem fitting used, we reverse the granting of the judgment n.o.v.

## New Trial Order

Caterpillar's motion for new trial was granted in the alternative on the basis of McGuire's counsel's misconduct. During closing argument, Caterpillar's attorney told the jury they only had one issue to decide and that was the design of the hose routing. He told the jury, "The Court agreed with me and is going to give this instruction. The Court has ruled that there is but one issue in this case bearing on liability." In rebuttal, McGuire's attorney argued as follows:

"Mr. Shultz tells you how he convinced the Judge to knock all these other things out, like the fire wall. That wasn't a design defect. I told you it wasn't. And I won. Well, he didn't win. As long as he brought it up I'm going to tell you what happened. He didn't win at all.

"He asked the Judge to kick this whole case out. And he argued. And he was helped in the argument by Ms. Shockman, and they sat there for a day and a half to try to do it and they couldn't do it. [Objection]

"The Court refused to kick it out...."

■ A trial court has wide discretion in ruling on a motion for new trial, and the order will not be reversed unless an abuse of discretion is shown. *Taylor v. Cate*, 117 Ariz. 367, 573 P.2d 58 (1977); *Sanchez v. Stremel*, 95 Ariz. 392, 391 P.2d 557 (1964). The supreme court also noted in *Sanchez* that it is more reluctant to reverse the granting of a new trial than the denial of one.

■ It is clear that the statements of counsel about the court's directed verdict were improper. In telling the jury that the court had refused to "kick out" the issue of defective design despite Caterpillar's day-and-a-half argument in favor of it, McGuire's attorney gave the jury the impression that the court sided with appellant.

"The rule observed by all members of the Bar in argument to the jury, is that it is improper to argue to the jury that the court would not have submitted the issue

unless there was evidence to support it. It is highly improper for counsel for plaintiff to argue that a refusal by the court to direct a verdict indicates its view to be that the evidence justifies a recovery.... When counsel disregards such basic rules of proper conduct, and it appears that his misconduct actually influenced the verdict, as here, he cannot complain if the trial judge grants a new trial." *Sanchez v. Stremel,* supra, 95 Ariz. at 395, 391 P.2d at 559.

See also *State v. Cortez,* 101 Ariz. 214, 418 P.2d 370 (1966) (new trial ordered because prosecutor argued, "[h]ad this been a weak case, the court would have directed us out").

■ McGuire asserts that, even when some impropriety has occurred, a new trial cannot be granted unless it has been shown that the impropriety clearly prejudiced the jury, and no prejudice was shown here. *Grant v. Arizona Public Service Co.,* 133 Ariz. 434, 652 P.2d 507 (1982). As was observed by Justice Feldman in his supplemental opinion in that case, however, a reviewing court cannot always be certain whether or not the misconduct influenced the verdict. It was a close case there, and it is a close case here. As was the case in *Grant,* the initial determination was made by the trial court, the person who "sees the witnesses, hears the testimony, and has a special perspective of the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed record." *Reeves v. Markle,* 119 Ariz. 159, 163, 579 P.2d 1382, 1386 (1978). We find no abuse of discretion in the ruling, having found none of the factors listed in *Grant* as being relevant in determining whether there has been abuse of discretion to be present in this case.

■ We also find no merit to appellant's contentions that the new trial order cannot be sustained because Caterpillar failed to object sufficiently and because Caterpillar's attorney invited the statement by his own argument. As noted above, Caterpillar did object at the time the statement was made. Appellant insists that the objection should also have been followed by a request for an admonition to the jury and a request for a mistrial or for additional instructions to the jury, citing, inter alia, *Betz v. Goff,* 5 Ariz.App. 404, 427 P.2d 538 (1967). We do not read the case law to require Caterpillar to have done more than it did. The misconduct complained of in *Betz* was nowhere near as serious as the misconduct involved here. Caterpillar's failure to request an admonition or remedial instructions is not fatal to its motion for new trial.

■ Nor do we find that counsel for Caterpillar "opened the door" as McGuire contends. Caterpillar's attorney told the jury it would be deciding only one issue, a necessary argument since the jury had been presented evidence on several theories of negligence and strict liability during the trial. It thus required the information that the issue to be decided was not nearly as complicated as the jurors might have originally thought. Caterpillar's attorney, however, did not discuss the lengthy argument that had taken place on its motion for directed verdict, did not explain how vigorously appellant had opposed the motion and did not imply that the court had taken a position on the merits of the case, all of which appellant's attorney did. Appellant's argument cannot be said to be merely a response to Caterpillar's argument since its scope went far beyond that of Caterpillar's. This case is not like that of *Anderson Aviation Sales Co. v. Perez,* 19 Ariz.App. 422, 508 P.2d 87 (1973), in which the trial court found that there was no indication the improper conduct had actually influenced the verdict, and the court of appeals affirmed that finding.

■ We note also that appellant's closing argument contained other elements of impropriety. Despite the trial court's refusal to instruct the jury on the definition of "strict liability" and despite his knowledge that the jury instructions nowhere utilized that phrase, appellant's attorney continually used the phrase in his argument. It is undeniable that that usage had an effect upon the jury since, during delib-

erations, it sent a note to the judge inquiring as to the definition of strict liability. Additionally, appellant's attorney lectured at length on the history and theory of the doctrine of products liability, suggesting that the law looks with favor upon the compensation of injured persons regardless of the existence of liability. Counsel also fairly closely paraphrased a jury instruction which the judge had ruled he would not give. Although the trial court granted the motion for new trial on the single instance of misconduct in appellant's argument about the directed verdict ruling, we note the additional improprieties also support the granting of the motion. *Chavez v. Tolleson Elementary School District*, 122 Ariz. 472, 595 P.2d 1017 (App.1979).

#### Alleged Trial Errors

Since we affirm the granting of the motion for new trial, in anticipation of retrial we address the contentions of appellant that the trial court committed error during the trial. Appellant contends the court erroneously permitted Caterpillar to use transcribed testimony in order to prepare its expert witness although its attorney had invoked the exclusionary rule pursuant to Rule 615, Rules of Evidence, 17A A.R.S. We find no error. See M. Udall and J. Livermore, Arizona Law of Evidence § 64 (2d ed. 1982).

■ Second, appellant complains that the trial court refused to admit into evidence a seat belt similar to the one that was on the loader at the time of the accident. Appellant sought to use the belt to show the jury that the buckle could not be opened when pressure was exerted on the belt. The trial court ruled it admissible only for the purpose of demonstrating that it was similar to the one on the loader at the time of the accident but refused to allow its admission for the test McGuire wanted to conduct. The refusal was because appellant had not demonstrated that the proffered belt was in substantially the same condition as the accident belt. An expert had testified at his deposition that bushings on seat belts wear out and affect the way they operate.

We find the trial court's ruling was correct. It would not have been proper for the court to permit McGuire to show the jury how the seat belt had kept him trapped in the loader when he was unable to establish that the belt was in substantially the same condition as the belt that was burned in the accident, especially since a layperson would not be able to determine the condition of the bushing. *Broderick v. Coppinger*, 40 Ariz. 524, 14 P.2d 714 (1932).

■ McGuire also complains of the directed verdict in favor of Caterpillar on the fire shield and seat belt theories. The testimony showed that McGuire's employer had purchased the loader without a seat belt. There was also testimony that Caterpillar's manual depicted a loader with a belt and that the parts list included one, although Caterpillar did not manufacture seat belts. The employer had apparently had a seat belt installed after it purchased the loader. Since the accident belt was neither manufactured nor installed by Caterpillar and since the seat belt was not the cause of the fire, the directed verdict as to that issue was correct. *Rocky Mountain Fire and Casualty Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 640 P.2d 851 (1982). The testimony with regard to the fire shield was that it was an optional item which the employer chose not to purchase; hence, we find no error in the court's ruling that appellant failed to make a prima facie case on this issue.

■ Finally, appellant complains that the court gave an instruction which paraphrased Restatement (Second) of Torts § 402A(1) (1965) but did not accurately quote it. We find that the paraphrasing was sufficiently accurate. McGuire also complains that an instruction that the jury could find Caterpillar not liable if it proved that the sole cause of the accident was either a subsequent modification by another person or a contrary use of the loader was improper because it focused on the conduct of the parties rather than on the product. The instruction was a paraphrase of A.R.S. § 12–683(2) and (3), and we find it was proper.

We also find no error in the court's refusal to give two requested instructions on strict liability since the instructions given adequately covered the theory without use of the phrase. Nor was it improper for the court to instruct the jury that Caterpillar was not liable for any negligence by Empire Machinery Company. Finally, the court properly refused appellant's instruction on remedial measures. The exclusionary rule has been held to apply in strict liability cases. *Hallmark v. Allied Products Corp.*, 132 Ariz. 434, 646 P.2d 319 (App.1982).

The judgment notwithstanding the verdict is reversed, and the case is remanded for a new trial.

HOWARD, P.J., and BIRDSALL, J., concur.