IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

EMMA SPRING, *Plaintiff/Appellant,*

*v.*

TIMOTHY R. BRADFORD, *Defendant/Appellee.*

No. 1 CA-CV 15-0505
FILED 1-12-2017

Appeal from the Superior Court in Maricopa County
No. CV2011-098170
The Honorable David M. Talamante, Judge

**AFFIRMED**

COUNSEL

Grysen & Associates, Spring Lake, Michigan
By B. Elliot Grysen

Law Office of Scott E. Boehm, PC, Phoenix
By Scott E. Boehm
*Co-Counsel for Plaintiff/Appellant*

Sanders & Parks, PC, Phoenix
By Mandi J. Karvis, Winn L. Sammons
*Counsel for Defendant/Appellee*

## OPINION

Presiding Judge Kent E. Cattani delivered the opinion of the Court, in which Judge Lawrence F. Winthrop and Judge Maurice Portley[1] joined.

**C A T T A N I**, Judge:

¶1         In this appeal, we consider whether and how the rule of exclusion of witnesses under Rule 615 of the Arizona Rules of Evidence applies to expert witnesses. We hold that, by its terms, Rule 615 does not automatically exempt expert witnesses from exclusion. The superior court may, however, exercise its discretion under subsection (c) of the rule—an exemption for "essential" witnesses—to allow an expert witness to observe other testimony (or to review transcribed testimony).

¶2         The defendant doctor in this medical malpractice case did not request that his expert witnesses be exempted from exclusion, but nevertheless provided the experts with transcripts of other witnesses' trial testimony in preparation for the experts' testimony. The superior court correctly concluded that the defendant violated Rule 615 by doing so, and also appropriately addressed the minimal scope of resulting prejudice through a jury instruction, rather than by striking the experts' testimony. Accordingly, and for reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶3         In January 2010, Emma Spring had her first appointment with Dr. Timothy Bradford, a chiropractor, to address a "knot" in her shoulder. After Bradford briefly massaged her shoulder, he used a "high velocity low amplitude thrust" to adjust Spring's neck. Spring immediately felt significant pain.

¶4         Spring consulted a neurosurgeon, Dr. Daniel Lieberman, who discovered a fragment of a herniated cervical disc compressing a nerve root in her spine. Dr. Lieberman performed surgery to remove the disc fragment and the remainder of the herniated disc, and he fused Spring's spine.

---

[1]     The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

Although Spring's symptoms improved, she continued to experience pain and weakness in her neck and left arm. Spring sued Bradford for medical malpractice, alleging that Bradford had negligently performed the chiropractic adjustment, thereby damaging her cervical spine.

¶5            At trial, the parties presented conflicting expert testimony. Spring called as her standard of care expert Dr. Allen Bragman, who stated that Bradford improperly used too much force and improperly used a rotational maneuver during the adjustment. Bradford presented testimony from Dr. Robert Iverson, who countered Dr. Bragman's conclusions and opined that Bradford's adjustment technique was appropriate.

¶6            Spring presented causation testimony from Dr. Lieberman, who stated that the timing of Spring's symptoms and the type of disc damage left him with "virtually no doubt" the chiropractic treatment had caused her injury. Bradford offered controverting causation testimony from Dr. Allen Hamilton, who testified that Spring had a preexisting disc herniation that became "suddenly symptomatic" following the manipulation, and that the cause of the injury was uncertain absent evidence regarding the extent of Spring's preexisting condition.

¶7            The jury returned a 6-2 verdict in favor of Bradford. The superior court denied Spring's motion for new trial, and Spring timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1), (5)(a).[2]

## DISCUSSION

¶8            Spring argues that the superior court erred in addressing Bradford's Rule 615 violations. She argues in particular that the court erred by declining to strike or preclude testimony by Bradford's experts as a remedy for the violations.

¶9            We review for an abuse of discretion the superior court's rulings on the admission or exclusion of evidence, as well as its assessment of appropriate remedies for rule violations. *Sandretto v. Payson Healthcare Mgmt., Inc.*, 234 Ariz. 351, 355, ¶ 8 (App. 2014); *see also State v. Jones*, 185 Ariz. 471, 483 (1996) (regarding remedy for violation of parallel rule of criminal procedure); *United States v. Washington*, 653 F.3d 1251, 1268 (10th Cir. 2011). We review the superior court's interpretation of the rule of

---

[2]            Absent material revisions after the relevant date, we cite a statute's current version.

exclusion of witnesses de novo. *See State v. Steinle*, 239 Ariz. 415, 417, ¶ 6 (2016).

## I.     The Rule of Exclusion.

**¶10**     Rule 615 requires the court, upon request, to exclude witnesses "so they cannot hear other witnesses' testimony. Excluded witnesses may not remain in the courtroom to hear the testimony of other witnesses, nor may either side share with them other witnesses' transcribed trial testimony. *See Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1373 (5th Cir. 1981);[3] *see also McGuire v. Caterpillar Tractor Co.*, 151 Ariz. 420, 425 (App. 1986). The rule is designed to prevent one witness's testimony from influencing that of another, and thus to prevent "fabrication, inaccuracy, and collusion." Fed. R. Evid. 615 advisory comm. note to 1972 proposed rules; *United States v. Hobbs*, 31 F.3d 918, 921 (9th Cir. 1994).

**¶11**     At the beginning of trial, with both parties' agreement, the court ordered that the rule of exclusion of witnesses would be in effect. But while cross-examining Dr. Hamilton (the defense causation expert), Spring's counsel learned that Bradford's counsel had provided Dr. Hamilton with a transcript of Spring's causation expert's trial testimony. Bradford's counsel had similarly provided Dr. Iverson (the defense standard of care expert) with a transcript of the trial testimony of Spring's standard of care expert. Spring argued that this violated the witness exclusion rule and asked the court to strike Dr. Hamilton's testimony and preclude Dr. Iverson from testifying.

**¶12**     The superior court found that Bradford's counsel had violated the exclusion order by providing trial transcripts to the defense experts, but noted that had counsel sought permission, the court likely would have allowed both sides' experts to review or observe trial testimony. The court further found that the violations had not prejudiced Spring, and thus denied the request to strike/preclude the defense experts' testimony (although with the caveat that the court would consider striking portions of the testimony if Spring were to point out any actual change from the expert's pretrial opinion). The court instructed the jury, however, that Bradford's attorney had (without Spring's knowledge) disclosed plaintiff's

---

[3]     The rule has been amended to conform to Federal Rule of Evidence 615, *see* Ariz. R. Evid. 615 cmt. to 2012 amendment, so we may consider as guidance federal case law interpreting the federal rule. *See, e.g., State v. Campoy*, 220 Ariz. 539, 546, ¶ 18 (App. 2009); *Haroutunian v. Valueoptions, Inc.*, 218 Ariz. 541, 548 n.8, ¶ 18 (App. 2008).

experts' trial testimony for the defense experts' review despite the rule of exclusion being in effect, and that in weighing the testimony of Bradford's experts, the jury should take into consideration the fact that the experts were presented in advance with trial testimony.

### A.    Exemption from Exclusion.

¶13        Rule 615 includes five express exemptions for witnesses not subject to exclusion, one of which is relevant here: "a person whose presence a party shows to be essential to presenting the party's claim or defense." Ariz. R. Evid. 615(c). Citing this exemption, Bradford asserts that experts in medical malpractice litigation are always essential witnesses and thus are always exempt from exclusion. But even though experts do not generally provide "fact" testimony that could be influenced by other witnesses' testimony, the language of the rule does not provide a blanket exemption for experts; rather, it authorizes the superior court to allow an exception to exclusion if a party "shows" the witness's presence to be essential. Ariz. R. Evid. 615(c); *see also Morvant v. Constr. Aggregates Corp.*, 570 F.2d 626, 629–30 (6th Cir. 1978) (recognizing that expert witnesses are not automatically exempted from sequestration as essential witnesses under Rule 615 and noting that "had the framers intended it, they would have said so, or added [an additional] exception"); *United States v. Seschillie*, 310 F.3d 1208, 1213 (9th Cir. 2002) (same); *Miller*, 650 F.2d at 1373–74 ("Whether or not it would be reasonable for a trial court to exempt an expert witness from a sequestration order, there is no required exemption implied under rule 615.").

¶14        Moreover, although an expert witness does not normally testify to facts, there are circumstances in which an expert may do so. *Morvant*, 570 F.2d at 630. In this case, for example, Spring's treating neurosurgeon, Dr. Lieberman, testified both as a fact witness regarding Spring's injury and treatment, and also as Spring's causation expert. The burden, therefore, properly remains on the party requesting the Rule 615 exemption to make "a fair showing" that "the expert witness is in fact required for the management of the case." *Id.*; *accord Opus 3 Ltd. v. Heritage Park, Inc.*, 91 F.3d 625, 629 (4th Cir. 1996).

¶15        Although we hold that, by its terms, Rule 615 does not automatically exempt expert witnesses from exclusion, the superior court may nevertheless exercise its discretion under the "essential" witness exemption of Rule 615(c) to allow an expert to listen to other testimony (or

to review transcribed testimony).[4] *See McGuire*, 151 Ariz. at 425 (finding no error in superior court's decision "permitt[ing]" defendant to use transcribed testimony for expert witness's preparation); 1 McAuliffe, *Arizona Practice Series: Law of Evidence* § 615:1 (4th ed. 2016) ("[E]ven though an exclusion order has been requested and made, the Court can permit one side's expert witness to hear or review the testimony of the opposing side's expert in order to be in a position to suggest areas for cross-examination."); *see also* Fed. R. Evid. 615 advisory comm. note to 1972 proposed rules (noting that the essential witness category "contemplates such persons as . . . an expert needed to advise counsel in the management of the litigation"); *Seschillie*, 310 F.3d at 1213. And in exercising its discretion, the court may properly consider that the anti-fabrication purpose of Rule 615 applies principally to fact witnesses, that an expert may review other experts' opinion reports and pretrial depositions, and that an expert's opinion may properly be based on other witnesses' trial testimony. *See* Ariz. R. Evid. 703; *Morvant*, 570 F.2d at 629 (noting "little, if any, reason for sequestering a witness who is to testify in an expert capacity only and not to the facts of the case"); *see also Hill v. Porter Mem'l Hosp.*, 90 F.3d 220, 223 (7th Cir. 1996).

¶16         Here, however, Bradford's counsel did not request that the court exercise its discretion to allow an exemption for expert witnesses. Accordingly, the superior court did not err by finding that Bradford violated Rule 615 by providing trial transcripts to the defense experts without first requesting exemption from exclusion.

## B.    Prejudice.

¶17         Bradford's rule violation notwithstanding, Spring is not entitled to the relief she seeks because she has not shown that she was prejudiced by the violation. Spring argues that the superior court was required to presume prejudice stemming from the rule violation. But there is no such requirement. *See Kosidlo v. Kosidlo*, 125 Ariz. 32, 35 (App.) (noting that a party asserting Rule 615 error in a civil case must show prejudice), *disapproved in part on other grounds*, 125 Ariz. 18 (1979).

---

4         Although Spring argues allowing exemption of experts under Rule 615(c) only benefits defendants, the rule applies equally to a plaintiff's expert who testifies during the case-in-chief based on facts presented in the plaintiff's lay witnesses' testimony, as well as to a plaintiff's expert who testifies in rebuttal. *See Davis v. State,* 787 S.E.2d 221, 229 (Ga. 2016).

¶18            Spring relies on the Arizona Supreme Court's statement in a criminal case that the superior court's "failure to honor an exclusionary request is presumed prejudicial unless the absence of prejudice is clearly manifest from the record." *State v. Roberts*, 126 Ariz. 92, 94 (1980).[5]  But *Roberts* involved a failure to honor an exclusionary request in the context of fact witnesses. *Id.*  No presumption of prejudice is generally necessary in the context of purely expert witnesses because disclosure of their expert reports and pretrial depositions establish a basis for assessing actual prejudice in the form of altered opinions.  Here, Spring's counsel received documentation of Bradford's experts' opinions before trial, and thus was well positioned to recognize any change in those opinions resulting from the experts' access to trial testimony.  And Spring has not detailed any such change or any other form of prejudice resulting from the Rule 615 violations.

¶19            Moreover, the violations in question were not the failure to exclude a witness, but rather Bradford's counsel's failure to ask permission for an exemption.  The distinction is critical because, as described above, the superior court could have—and in fact indicated it likely would have—exercised its discretion to allow the expert witnesses to review relevant trial transcripts under the essential witness exemption of Rule 615(c).  The relevant prejudice in this case thus does not stem from the expert's review of prior testimony, but rather only from Spring's counsel lack of advance notice that the defense experts had reviewed trial transcripts. Consequently, the scope of potential prejudice is significantly more limited than the potential prejudice from allowing fact witnesses to review other fact witnesses' testimony before testifying. *Compare Roberts*, 126 Ariz. at 94 (noting that it would be impossible to show how a fact witness's testimony had been influenced by observation of others' testimony), *with Hill*, 90 F.3d at 223 (noting that pretrial expert reports and depositions mitigate the risk that experts might improperly tailor their testimony in violation of Rule 615).

¶20            Accordingly, the superior court did not err by declining to apply a presumption of prejudice resulting from Bradford's technical Rule 615 violations.

---

[5]       Spring also cites *State v. Fulminante*, 193 Ariz. 485 (1999), for this principle.  But the court in *Fulminante* did not reach the issue of prejudice because the witness, as a crime victim, was properly exempted from exclusion. *See id.* at 502, ¶¶ 58–59.

### C. Remedy.

**¶21** Spring further argues that the superior court's remedy for the Rule 615 violations was inadequate. She claims that the court should have struck or precluded the defense experts' testimony, rather than simply instructing the jury to consider the experts' access to trial transcripts in weighing the evidence.

**¶22** The superior court has discretion to determine an appropriate remedy given the particular circumstances of a rule violation. *See Montgomery Ward & Co. v. Superior Court*, 176 Ariz. 619, 621–22 (App. 1993) (describing superior court's discretion to determine appropriate sanction for discovery violation); *see also Washington*, 653 F.3d at 1268. Potential remedies for violating an exclusion order include contempt, allowing cross-examination regarding the violation, instructing the jury regarding the violation, or under the right circumstances, precluding the testimony. *United States v. Cropp*, 127 F.3d 354, 363 (4th Cir. 1997) (citing *Holder v. United States*, 150 U.S. 91, 92 (1893)); *Hobbs*, 31 F.3d at 921 (same). An intentional violation of the rule militates in favor of a more significant sanction. *See Washington*, 653 F.3d at 1268–69.

**¶23** Spring asserts that Bradford's counsel intentionally violated the rule in order to secure an unfair advantage and that his actions constituted "secret, deliberate and repeated misconduct under Rule 615." But the superior court (which was in the best position to assess counsel's motivations and the effects of counsel's actions) found that counsel's actions were based on a mistaken interpretation of the rule's strictures, rather than bad faith.

**¶24** Given the absence of actual prejudice, and in light of the court's statements that it would have exempted the experts from exclusion if requested, the court did not abuse its discretion by imposing a lesser sanction than outright preclusion of the testimony. The instructions informing the jury of the violations and directing the jury to consider prior knowledge of opposing experts' testimony in weighing the defense experts' testimony provided a remedy that was closely tailored to the scope of the violation. *See Hill*, 90 F.3d at 223; *see also Holder*, 150 U.S. at 92 (noting that a witness's "testimony is open to comment to the jury" to address a sequestration violation). Accordingly, the superior court did not abuse its discretion in assessing the impact of the Rule 615 violations or in fashioning an appropriate remedy.

## II.    New Trial Based on Aggregate Misconduct.

¶25        Spring argues that the superior court erred by denying her motion for new trial premised on aggregate misconduct—the Rule 615 violations, together with a disclosure violation for failing to disclose impeachment evidence used by Bradford's counsel during cross-examination.   We review the court's ruling regarding the disclosure violation, as well as the denial of a motion for new trial, for an abuse of discretion.  *See Leavy v. Parsell*, 188 Ariz. 69, 72 (1997); *Sandretto*, 234 Ariz. at 355, ¶ 8.

¶26        During his deposition, Spring's standard of care expert Dr. Bragman characterized "subluxation," Bradford's initial diagnosis of Spring's shoulder pain, as "nonsense."   At trial, Bradford's counsel impeached Dr. Bragman with evidence that websites for chiropractic clinics with which Dr. Bragman was affiliated referenced subluxation (a slight displacement of a vertebra).  The website evidence had not previously been disclosed, and at Spring's request, the court instructed the jury that Bradford had failed to disclose the website documents despite an affirmative duty to do so, and to disregard the questioning relating to the websites.

¶27        Under Arizona Rule of Civil Procedure 59(a)(2), the superior court may grant a new trial on the basis of misconduct that materially affected the moving party's rights.  *See also Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 451 (1982).  The remedy of a new trial may be applied not as a form of discipline for counsel, but rather "to prevent a miscarriage of justice," *id.* (citation omitted), "when it appears probable that the misconduct 'actually influenced the verdict.'"  *Leavy*, 188 Ariz. at 72 (quoting *Grant*, 133 Ariz. at 454).

¶28        Spring argues that the superior court erred under *Leavy* by not inferring prejudice stemming from Bradford's counsel's aggregate rules violations.  In *Leavy*, the Arizona Supreme Court stated that prejudice should be inferred (unless rebutted) in the case of significant misconduct (particularly knowing or deliberate violations) that bears on essential issues and renders the extent of actual prejudice impossible to determine, and that "is apparently successful in achieving its goals."  188 Ariz. at 73.

¶29        Here, any misconduct was, in context, relatively insignificant.  As described above, the Rule 615 violations were largely technical rather than substantive, and the non-disclosure was of information used only briefly for impeachment on a collateral issue.  Although Spring claims the

misconduct represented deliberate violations, the court specifically found otherwise. And the misconduct did not render the extent of prejudice impossible to determine; rather, the superior court reasonably assessed the relatively minor scope of resulting prejudice. Further, the court reasonably concluded that any such prejudice was adequately addressed by Spring's opportunity to cross-examine the experts and by the instructions allowing the jury to consider the experts' receipt of trial transcripts, as well as the instruction directing the jury to disregard the brief website discussion. Finally, although Spring asserts that the defense verdict is evidence that Bradford's counsel's actions successfully swayed the jury, the superior court reasonably rejected that argument and found that the verdict was supported by the evidence. Accordingly, the court did not abuse its discretion by denying Spring's request for a new trial on grounds of aggregate misconduct.

**CONCLUSION**

¶30 The judgment is affirmed. As the prevailing party, Bradford is entitled to his costs on appeal upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA

10