z
NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

REINA IVON QUINTANA-SUAREZ, et al., *Plaintiffs/Appellants*,

*v.*

WALTER MARTIN CAZARES, *Defendant/Appellee*.

No. 1 CA-CV 19-0112
FILED 10-29-2019

Appeal from the Superior Court in Maricopa County
No. CV2017-004510
The Honorable Bruce R. Cohen, Judge

**AFFIRMED**

COUNSEL

The Helms Law Firm PLC, Phoenix
By Michael G. Helms
*Counsel for Plaintiffs/Appellants*

Hill Hall & DeCiancio PLC, Phoenix
By Thomas C. Hall, Christopher Robbins
*Counsel for Defendant/Appellee*

_____

## MEMORANDUM DECISION

Judge Maurice Portley[1] delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge David D. Weinzweig joined.

_____

**P O R T L E Y**, Judge:

**¶1**　　　　Reina Quintana Suarez ("Quintana"), two of her children, and her mother, Micaela Suarez Muniz ("Suarez"), appeal from the judgment entered against them after a jury trial and the denial of their motion for new trial.  For the following reasons, we affirm.

### FACTUAL[2] AND PROCEDURAL BACKGROUND

**¶2**　　　　Quintana, her four children, and mother were stopped in an SUV at a red traffic light when they were rear-ended by Walter Cazares's Honda Accord at low impact.  No injuries were reported at the scene. The children and Suarez told Quintana they were not hurt.  Suarez, who was sitting in the front passenger seat, testified that she did not hit any part of her body on the SUV or immediately experience any pain or discomfort. Moreover, Quintana told Cazares, as well as the police officers who responded to the accident, that she was not injured.

**¶3**　　　　A day or two later, Quintana, Suarez, and two of the children began to experience back and neck pain.  Quintana never took any over-the-counter pain relievers or other medication for her pain.  She and the other family members subsequently went to Dr. Lance Gardner, a chiropractor, for treatment.  They received three months of chiropractic adjustments and electrical stimulation.  Suarez felt worse after the chiropractic adjustments.

_____

[1]　　　The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]　　　We review the facts in the light most favorable to upholding the jury's verdict. *See Larsen v. Nissan Motor Corp. in U.S.A.*, 194 Ariz. 142, 144, ¶ 2 (App. 1998).

¶4            Quintana, on behalf of herself, her children, and her mother, sued Cazares for the September 2016 accident.  The matter went to trial. Cazares admitted liability and the trial focused on causation and damages. The parties presented conflicting medical evidence at trial on whether Quintana and other family members were injured by the accident.

¶5            Dr. Gardner testified that Quintana and Suarez were injured in the accident.  He diagnosed them with "class 1" back and shoulder sprains and strains, and Suarez with post-concussion syndrome. He testified that symptoms can develop and worsen shortly after an injury, noting that Suarez complained of severe back and shoulder pain from the first visit, and Quintana continued to report severe back and neck pain after two weeks.  Dr. Gardner observed severe muscle spasms in her back.

¶6            Dr. Gardner sent Quintana and Suarez to a nurse practitioner to assess if either needed prescription medication.  The records from the nurse practitioner were admitted at trial and demonstrate that the women reported different pain levels to Dr. Gardner and the nurse practitioner. For example, on September 23, Quintana reported severe neck pain to Dr. Gardner but, the next day, the nurse practitioner noted that Quintana had no neck pain or tenderness, no spasms, and full range of motion.  Then, on September 26, Quintana reported to Dr. Gardner that she still had frequent and severe neck pain.  Similarly, Suarez did not report any neck pain, range of motion issues, or muscle spasms to the nurse practitioner.

¶7            Dr. Gardner referred the women to Dr. Jeffrey Vinck, another chiropractor, who tested for pain using a surface electro-myogram ("EMG").  Dr. Vinck testified that both women had abnormal surface EMG findings on September 23, suggesting both had back pain on the testing date.  He also performed range of motion tests on Quintana and reported no impairment.

¶8            The jury heard from a medical doctor who questioned the alleged injuries.  Dr. Todd Levine, a neurologist specializing in EMGs, testified that, since 2000, two major medical neurology groups have determined that surface EMGs have "no value . . . in evaluating nerve disease, muscle disease, [or] back pain."   He opined that Dr. Vinck's assessment that a surface EMG could conclusively show pain and back injury was incorrect.  He testified that in fact the consensus in the neurological community—that surface EMGs have no utility in diagnosing physical injury or pain—has not changed since 2000.

**¶9**        Dr. Levine also reviewed Dr. Gardner's records of Quintana and Suarez and found that they showed no abnormal findings.  He pointed out that despite Quintana's complaints of severe pain and the surface EMG on September 23, the records of the nurse practitioner's exam on September 24 showed that Quintana had no neck pain complaint, no muscle spasms, and full range of motion of her neck.  Dr. Levine recognized that pain and numbness are subjective complaints that physicians should take seriously, but testified that the surface EMGs were medically unnecessary.  He also explained that based on their symptoms, he would have suggested for both women up to six weeks of "conservative treatment" consisting of rest and anti-inflammatory medication rather than chiropractic or other interventional treatment.

**¶10**        Finally, Joseph Manning, an accident reconstructionist and biomechanics specialist, testified about his investigation of the two vehicles. Specifically, based on his analysis that Cazares's sedan struck Quintana's SUV with "just over 12,000 pounds" of force, he calculated that the occupants of the SUV experienced 7,300 foot-pounds of force from the collision and a sudden acceleration of 5.5 miles per hour.  He concluded that he did not "see any mechanisms for acute injury" from the low speed collision.

**¶11**        After jury instructions and closing arguments, the jury returned a defense verdict.  After the entry of judgment, Quintana and the others unsuccessfully moved for a new trial, arguing the verdict was against the weight of the evidence and the court improperly admitted Dr. Levine's and Manning's testimony.  After the motion was denied, Quintana and Suarez appealed.

## DISCUSSION

**¶12**        Quintana and the family members argue the jury's verdict is contrary to the weight of the evidence and Dr. Levine's and Manning's testimony was inadmissible. As a result, they suggest we reverse the verdict and send the case for a new trial.

**¶13**        On appeal, we defer to the jury's factual findings and "will not set aside the verdict unless no evidence supports it." *State v. Fischer*, 242 Ariz. 44, 49, ¶ 15 (2017). Evidence, even contradictory evidence, is substantial if it allows a reasonable person to reach the jury's decision. *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51–52, ¶ 11 (App. 2009).  And we will affirm the court's evidentiary rulings admitting evidence absent a clear

4

abuse of discretion or legal error and resulting prejudice. *Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, 399, ¶ 10 (App. 2000).

## I.     The Jury Verdict

**¶14**          Generally, in an automobile accident case the plaintiffs must prove (1) a duty requiring the defendant to conform to a certain standard of care; (2) the defendant's breach of that standard of care; (3) a causal connection between the defendant's conduct and the injury; and (4) actual damages. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007). Because Cazares admitted liability, the issues at trial focused on the last two elements, causation and damages. The jury heard from Quintana, Suarez, their chiropractors, a neurologist and the accident reconstruction expert. The jury had to determine the facts, evaluating and assessing the witnesses to determine if Quintana and the others demonstrated causation and damages. *See Belliard v. Becker*, 216 Ariz. 356, 359, ¶¶ 17–20 (App. 2007). In reviewing the record on appeal, we defer to the jury's assessments of witness credibility, and do not reweigh conflicting evidence, *see Kuhnke v. Textron, Inc.*, 140 Ariz. 587, 591 (App. 1984), and will not substitute our evaluation of the facts, *Ballesteros-Suarez*, 222 Ariz. at 52, ¶ 11.

**¶15**          The record included substantial evidence to support the jury's verdict. Quintana and Suarez testified about the accident, the pain they and the children felt days later and their treatment. Additionally, Dr. Gardner testified their injuries, described as back and neck soreness and pain, was the result of the accident and about his treatment, as did Dr. Vinck. The jury also heard that both women told Cazares, the police and others at the scene that they did not believe anyone was injured. Additionally, the jury heard from Manning, Dr. Levine, and had the medical records, which included the notes from the nurse practitioner. The jury then, as properly instructed, had to weigh the evidence and decide the facts.

**¶16**          The jury, in considering all the testimony and evidence, determined that Quintana did not prove causation. They could have relied on the testimony of Dr. Levine and Manning over that of Drs. Gardner and Vinck, or given more credence to Quintana and Suarez's initial reports at the scene than their subsequent complaints. Regardless, the jury's prerogative is to assess credibility and resolve conflicting evidence. *See Kuhnke*, 140 Ariz. at 591. Accordingly, based on our review of the record, we cannot say that *no* evidence supports the jury's verdicts. Thus, there is no legal basis to set aside the verdict. *Fischer*, 242 Ariz. at 49, ¶ 15.

**¶17** Moreover, trial courts have "significant latitude" in ruling on new trial motions. *See Soto v. Sacco*, 242 Ariz. 474, 478, ¶ 8 (2017). The superior court properly applied the *Fischer* standard when ruling on the motion for new trial. As the court noted, the jury's verdict is neither arbitrary nor against the weight of the evidence. *See Fischer*, 242 Ariz. at 50, ¶ 21 (trial judge has broad discretion "to guard against arbitrary verdicts"). Therefore, the court did not abuse its discretion by denying the motion for new trial.

## II.    Evidentiary Issues

**¶18** Quintana and the other family members next argue that Manning's testimony lacks proper foundation, relying on cases from other jurisdictions. Essentially, they argue Manning could not base his calculations on photographs of the vehicles, repair estimates, and studies of other vehicle collisions.

**¶19** No *per se* rule prohibits biomechanical experts from testifying as experts. *See Lohmeier v. Hammer*, 214 Ariz. 57, 64–65, ¶¶ 26–29 (App. 2006). Manning did not base his calculations solely on other published tests. He also relied on post-accident photographs of both vehicles, the collision report, a damage estimate for the SUV, and medical records. He testified that relying on photographs and repair estimates is an accepted practice in his field, and explained that he calculated the force of the collision using the crush damage to the vehicles, another regular practice in his field. Given that he relied on information from this collision and his use of accepted practices in his field, any alleged deficiencies in his testimony go to the weight of the testimony, not its admissibility. *See Lohmeier*, 214 Ariz. at 68–69, ¶¶ 41–42. And it was for the jury to assess witness credibility and the weight to be given to any testimony. The trial court did not abuse its discretion in admitting Manning's testimony. *See Logerquist v. McVey*, 196 Ariz. 470, 487, ¶ 51 (2000); *Webb v. Omni Block, Inc.*, 216 Ariz. 349, 352, ¶ 6 (App. 2007).

**¶20** Finally, Quintana and the other family members argue that the court's limiting order precluded Dr. Levine from testifying about causation or the reasonableness of treatment. In the order, the court ruled that Dr. Levine could not offer an opinion about causation or the reasonableness of treatment, but could offer his opinion on whether the treatment and tests were medically necessary.

**¶21** Although they argue Dr. Levine improperly testified that Drs. Gardner and Vinck's treatment "was unnecessary and incorrect," Dr.

Levine's testimony was limited to his opinion that the testing Dr. Vinck performed was "medically unnecessary." He contested Dr. Vinck's use of a surface EMG test to assess pain; he did not testify the injuries were unrelated to the accident. Thus, Dr. Levine's testimony was not precluded by the motion *in limine* and the court did not err by overruling the objections to the contrary.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm the jury's verdict and the trial court's denial of the motion for new trial. As the prevailing party, Cazares is entitled to his costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA