767 P.2d 707

**Jerome J. LEVITT and Geraldine Levitt, husband and wife, and Richard K. Olsen, General Partner for Sedona Dells Associates, an Arizona limited partnership, Plaintiffs–Appellees,**

**and**

**Maurice J. Odom, a single man, Defendant–Appellee,**

**v.**

**FIRST AMERICAN TITLE INSURANCE COMPANY OF ARIZONA, Defendant–Appellant.**

**No. 1 CA–CIV 9372.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 27, 1988.

Reconsideration Denied Nov. 23, 1988.

Review Denied Feb. 15, 1989.

**360**

Favour, Weaver, Moore & Schuyler by John B. Schuyler, Jr., Prescott, for plaintiffs-appellees.

Mangum, Wall, Stoops & Warden by Robert W. Warden, Flagstaff, for defendant-appellant.

## OPINION

GRANT, Judge.

This is an appeal by First American Title Insurance Company of Arizona (First American) from a judgment of $47,394.75 resulting from a complaint for breach of contract and breach of fiduciary duty against First American by Jerome J. Levitt and Geraldine M. Levitt (Levitt) and Richard K. Olsen, general partner for Sedona Dells Associates, an Arizona limited partnership (Olsen).

## PROCEDURAL HISTORY

The case from which this appeal arises originally involved two Yavapai County Superior Court actions. Cause No. 37883 was a suit filed by First American against Maurice J. Odom (Odom) to set aside a judgment in a previous suit (Yavapai County No. 32949) in which Odom had foreclosed the right of redemption of a certificate of purchase he obtained for a well site located in the subdivision property known as The Dells. Cause No. 40127 was a suit by Levitt, as trust beneficiary, and Olsen against First American for damages caused by First American in allowing the well site to be lost for the nonpayment of taxes. The two actions were consolidated for all purposes, and pursuant to stipulation the trial court dismissed without prejudice action No. 37883 with the express reservation that all issues involved in that suit would be reserved and asserted in action No. 40127. The trial court directed a verdict that the judgment was valid in Odom's action against First American which foreclosed the right of redemption. Cause No. 40127 was tried to a jury and a jury verdict was entered in favor of Levitt and Olsen in the amount of $40,000 plus attorney's fees and costs.

## FACTS

The real property which is the subject of this lawsuit is known as The Dells Subdivision, Yavapai County, Arizona. It is a quarter section carved out of and totally surrounded by U.S. Forest Land. It is located about seven miles west of Sedona on the road to Cottonwood. First American held the property in trust for the benefit of Levitt.

In November, 1968, prior to recording the subdivision plat, a well had been drilled on the property. There was no other source of water to the property. The well site is located on Lot 1 on the plat recorded by First American. The well site was sold for nonpayment of 1971 taxes to Odom for $5.14 on February 28, 1973. Odom sued First American to foreclose the right of redemption on October 4, 1976, and First American's statutory agent was served

with a summons and complaint. A *lis pendens* giving notice of this action was recorded by Odom on October 4, 1976. An amended complaint was also served on First American on March 23, 1977. First American failed to defend these suits, and an affidavit of default was filed. A judgment was entered in favor of Odom on July 3, 1979, and the Yavapai County Treasurer issued its deed on August 8, 1979, conveying the interest of the trustee First American to Odom.

In 1977, First American was asked by a law firm acting on behalf of Levitt and other beneficiaries to do a tax search on The Dells property. The tax search was done and a report was sent to the law firm on May 18, 1977. The law firm sent First American a check in the amount of $11,739.42 for all of the taxes shown due on the report. Despite the fact that the Odom complaint had been filed, a *lis pendens* recorded, and service of process made on First American, First American failed to discover and disclose in its May, 1977, report to the law firm the *lis pendens* or the outstanding certificate of purchase. First American did not explain to the jury why neither the original Odom complaint nor the amended Odom complaint was answered.

In 1980, Olsen became interested in purchasing The Dells Subdivision. Olsen began negotiations with Levitt and agreed to pay $600,000 to purchase the property. Escrow was opened and because First American held the property in trust for Levitt, First American was listed as the seller. Olsen's offer to purchase the property was contingent upon his approval of a preliminary title report. This report indicated that the well site was excluded from Parcel 1. Olsen had not known of Odom's acquisition of the well site prior to receiving the title report. Olsen wrote to Levitt regarding the well site problem, and then brought the problem to the attention of First American. It was at this time that the amended complaint from Odom was discovered by First American in a miscellaneous trust file—a file for unclassifiable documents. Olsen was told by First American that the service of process of the

amended complaint had been improper and that First American would reacquire the well site. With these assurances, Olsen agreed to close escrow.

Escrow closed on July 8, 1980, with a $90,000 cash down payment and promissory note in the amount of $510,000 to the Jerome J. Levitt Revocable Trust. A supplement to the escrow instructions in which Levitt agreed to "subrogate his rights in and to the well site to buyer herein for recovery of same" was signed on the closing date. Olsen agreed to bear any costs incurred in the recovery of the well site in this supplement because of the assurances from First American that it would reacquire the well site. Olson agreed to close the escrow because of the subrogation agreement in the addendum to the escrow instructions and the assignment by Levitt to Olson. At the time this subrogation agreement was signed, both Olsen and Levitt recognized Levitt had a cause of action against First American if First American had wrongfully lost the well.

Olsen made a demand on First American to institute legal proceedings to recover the well site. First American then filed suit against Odom on August 6, 1980. The only factual or legal basis relied upon by First American in support of its position that it had not lost title to the well site to Odom was that First American had not been given notice as *trustee* of Odom's action to foreclose the right of redemption. There was no question, however, that First American had been served and had received notice of the lawsuit. The only question was whether service was valid as a matter of law. After denial of a motion for summary judgment, settlement negotiations began between Odom and First American.

Olsen made a demand on First American to pay the $7,000 requested by Odom. First American made a $2,500 offer to Odom which was refused. First American refused to pay Odom's demand of $7,000. Olsen then paid the $7,000 to Odom who quitclaimed the well site to Levitt who in turn quitclaimed it to Sedona Dells Associates (Olsen) on November 3, 1981. The damages claimed by Olsen in the lawsuit

were the 11% interest on the $510,000 note, the loss of the use of the $90,000 down payment, $5,000 paid in real estate taxes on land he was unable to sell, and $7,000 he paid to Odom for the well site.

## ISSUES

First American raises the following issues on appeal: (1) whether First American breached its fiduciary duty to Levitt as beneficiary of the trust; (2) whether Olsen's rights were subrogated to Levitt's rights; (3) whether First American's assurances regarding the reacquisition of the well site established a duty that First American owed to Olsen; (4) whether the well was located on the well site; (5) whether the trial court erred in instructing the jury that both Olsen and Levitt were co-beneficiaries of the trust and as such were owed a fiduciary duty by First American; and (6) whether the trial court erred in refusing to instruct upon the issues of assumption of risk, contributory negligence and measure of damages.

## BREACH OF FIDUCIARY DUTY AND SUBROGATION

The first three issues must be discussed together as they are interrelated.

■ First American takes the position that Levitt, the sole beneficiary of the trust with First American, was not damaged by any act of First American. That is, Olsen did not refuse to consummate the sale by virtue of the discovery that Odom had acquired title to the well site; there was no reduction in the purchase price of $600,000 by virtue of the discovery; and the $7,000 paid to Odom to reacquire the well site was paid by Olsen, not Levitt. Therefore, First American argues, Levitt suffered no pecuniary damage, and if there was damage, Levitt had assigned any claim to Olsen and thus was not a real party in interest within the meaning of Rule 17(a), Rules of Civil Procedure.

Levitt takes the position that First American breached its duty as the trust beneficiary to Levitt's detriment,[1] and that by virtue of the assignment and the subroga-

tion agreement Olsen become entitled to assert the rights and claims of Levitt as a beneficiary against First American. In short, Olsen stood in Levitt's shoes. Levitt points out, and we agree, that the evidence was uncontroverted regarding the duty of First American with respect to protecting the assets and the duty of reporting to its beneficiary all matters which might affect the trust property or the beneficiary's interest in the trust property. The evidence likewise is uncontroverted that the 1973 title report failed to meet the standard of care in the industry by failing to discover and disclose the certificate of purchase by Odom. The same is true of the 1977 tax search, which also failed to discover and disclose the *lis pendens*. First American's own witnesses testified that the amended complaint in the Odom foreclosure suit was sufficient to put First American on notice that the suit involved trust property held by First American. Because the suit was ignored, Levitt lost all beneficial interest in the well site. Levitt did not know about the loss until a contract to sell the property to Olsen was signed. Olsen testified he would not have closed escrow without the subrogation agreement from Levitt.

■ We agree that Levitt was damaged because the merchantability and value of the property was entirely dependent upon the ownership of the well, the replacement value of which may have been as high as $50,000. An exhibit in evidence showed the replacement cost estimate for the well was $18,330.90. We believe that the trial court properly held that both Levitt and Olsen could jointly recover for First American's breach of fiduciary duty to Levitt. If a trustee has committed a breach of trust and the beneficiary assigns his interest under the trust, the assignee can hold the trustee liable for the breach of trust. *Scott on Trusts* § 132.2 (1987); *see* Annot., 57 A.L.R.2d 603 (1958). The assignee can compel the trustee to redress breaches of trust committed before the transfer.

This case is analogous to the facts in *Aetna Cas. & Sur. Co. v. Valley Nat'l*

---

**1.** *See* A.R.S. § 14–7302.

*Bank,* 15 Ariz.App. 13, 485 P.2d 837 (1971). In an action by the bank as assignee of its depositor, whose funds were stolen from the night depository facility, this court held that the depositor could validly assign her rights to the proceeds of an insurance policy to the bank after theft of deposit from the bank had occurred. The court also held that the depositor had suffered a "loss" even though she had been paid by the bank for assigning her legal rights under the policy.

We think there is no question under the doctrine of *Aetna* that Levitt suffered a loss. Levitt no longer had the well, which was the only water source for the entire subdivision. Levitt chose to cover this loss by assigning and subrogating the right to recover against First American to Olsen, the purchaser of the property. Olsen's willingness to accept the assignment and assume the subrogation does not negate Levitt's loss.

The *Restatement (Second) of Trusts* § 200 (1959) supports this holding. Comment a states that if a beneficiary of a trust transfers his interest, the transferee can maintain a suit for breach of trust. Further, comment d states that a person who has an interest in the subject matter of the trust, although not a beneficiary of the trust, can maintain a suit against the trustee to prevent injury to his interest in the subject matter of the trust. Finally, comment g states that a transferee of the interest of the beneficiary becomes a beneficiary and can maintain a suit against the trustee to enforce the trust or to enjoin or obtain redress for a breach of trust. So also a creditor of the beneficiary who acquires the lien upon the interest of the beneficiary is, to that extent, a person who has succeeded to the interest of the beneficiary, and who can maintain a suit against the trustee so far as this is necessary for the protection of his interest. In the absence of authority to the contrary, Arizona looks to the *Restatement* as authority. *Fendler v. Phoenix Newspapers, Inc.,* 130 Ariz. 475, 636 P.2d 1257 (App.1981).

## WELL SITE LOCATION AND OWNERSHIP

■ First American alleges that in the course of trial preparation for litigation, it hired land surveyors to determine whether the well was located on the well site. That investigation, First American alleges, determined that the well was not located on the well site. As laid out and monumented, the subdivision had located the well within the confines of Lot 1 and not within the well site which was lost by tax sale to Odom. William J. Cheek, a registered land surveyor and civil engineer who testified as an expert for Levitt, said that by utilizing the courses and distances set forth in the legal description on the subdivision plat recorded with the County Recorder, rather than monuments on the ground, the well would, in fact, be located on the well site. First American alleges that Mr. Cheek admitted in his deposition that the subdivision, as laid out by the original surveyor, did not have the well on the well site. There is confusing and conflicting testimony by the experts of both parties on the exact location of the well site. The record demonstrates, however, that the jury made a factual determination that the well was located on the well site when it rendered its verdict in favor of the plaintiffs based upon the evidence.

This court is only concerned with whether substantial evidence exists to support the judgment of the trial court. *Whittemore v. Amator,* 148 Ariz. 173, 175, 713 P.2d 1231, 1233 (1986). A judgment based on a jury verdict will be affirmed if substantial evidence is found to support the verdict. *McFarlin v. Hall,* 127 Ariz. 220, 224, 619 P.2d 729, 733 (1980).

First American attempts to confuse Cheek's testimony in two ways. First, it states that the original surveyor showed the right-of-way of U.S. Highway 39A as being narrower than it actually was. Cheek's testimony makes it clear, however, that when measurements are taken from the brass cap set by the U.S.G.S., which was used by the original surveyor, to the westerly boundary of the subdivision and

then to the well site, the well is within the well site as shown on the recorded map.

Secondly, First American argues that the well was not located on the well site because of two pins of unknown origin located near the well site. These pins were 50 feet apart, which was the same dimension as the well site shown on the plat. · Cheek unequivocally testified that these pins were not in accordance with the original survey, nor could he identify the pins or their source. First American cites numerous cases for the proposition that fixed monuments and natural objects control over distances and that actual boundaries must prevail over maps or plats. First American ignores, however, the fact that these two pins were not natural objects and that they were not identifiable as fixed monuments. They were never proved to have been placed there by the original surveyor. Although the rule of law stated by First American may be correct, it has no application to the evidence as shown in this case. Furthermore, Cheek testified that the pins had no relevancy to the actual location of the well, because it is only logical for a surveyor to place a well site around the well, and it is significant that the utility easement shown on the plat led to the well site. Therefore, there was substantial evidence upon which the jury could find that the well was indeed located upon the well site.

## INSTRUCTIONS

First American claims that the court erred by giving instructions 15 and 19 and claims these instructions improperly amounted to making Olsen and Levitt co-beneficiaries of the trust. First American also claims error in the court's refusal to instruct the jury on the issues of assumption of risk, contributory negligence and the measure of damages.

The standard of review to test the propriety of a jury instruction is to consider all of the instructions given to the jury as a whole in order to determine whether the jury was misled as to the law. *Kuhnke v. Textron, Inc.*, 140 Ariz. 587, 592, 684 P.2d 159, 164 (App.1984).

■ Instruction 15 reads as follows:

If you find that [First American] breached the trust agreement and caused a delay in the development of Sedona Dells Subdivision, you may award damages for the loss of interest, if any, on the investment and any other costs incurred.

If you find that [First American] breached the trust agreement with respect to the well site then you may award damages to the plaintiffs for the cost incurred in recovering the well site.

First American claims this instruction made Olsen and Sedona Dells Associates a direct beneficiaries of the trust agreement between Levitt and First American. First American also claims that this instruction allows Olsen to recoup his costs incurred in recovering the well site even though Levitt incurred no such costs and Olsen was not a party to the trust agreement.

Instruction 19 reads:

If you decide for plaintiffs on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate for any of the following elements of damages proved by the evidence to have resulted from defendant's negligence.

First American again objects to this instruction because it makes no distinction between Levitt as the beneficiary of the trust and Olsen. First American states that Levitt and Olsen were treated throughout the course of the trial as co-beneficiaries and that the jury was instructed to this effect. First American claims there is no evidence to support this and that therefore the verdict must be reversed.

Instructions 15 and 19 were damage instructions. They merely instructed the jury regarding whether plaintiffs were entitled to damages should First American be found liable, and how to assess the amount of damages. As we held in the first part of this opinion, Olsen was standing in the shoes of Levitt and therefore any amount of damages claimed by Olsen was the same amount to which Levitt would have been

entitled had Olsen not been subrogated to Levitt's rights.

First American argues that the trial court erred in refusing to instruct on the issues of assumption of risk, contributory negligence and measure of damages. These claims are meritless. The record is devoid of evidence concerning Levitt's or Olsen's participation in or knowledge of the failure by First American to pay taxes on the well site or of Odom's acquisition of the well site. The events causing the loss of the well site had all occurred prior to either Olsen or Levitt discovering the loss. The rule that contributory negligence is a question of fact for the jury does not apply when there is no evidence from which a reasonable juror might conclude that there was contributory negligence on the part of the plaintiff. *Mitchell v. Colquette*, 93 Ariz. 211, 214, 379 P.2d 757, 759 (1963); *W.R. Skousen Contr., Inc. v. Gray*, 26 Ariz.App. 100, 102, 546 P.2d 369, 371 (App. 1976).

First American argues that the court also failed to give jury instructions as to the proper measure of damages to be applied. The claim of the plaintiffs was for interest incurred by Olsen on the purchase price paid to Levitt, real estate taxes paid by Olsen on the property, and the $7,000 paid by Olsen to recover the well site from Odom. First American argues that Levitt paid none of these, and furthermore, that there was evidence the well could have been replaced. First American, however, fails to refer in the record to any instructions it submitted which were refused on this issue. Furthermore, First American has not shown how it was prejudiced by the damage instructions. Any error in the jury instructions regarding damages is harmless where the evidence clearly shows that the damages exceeded the jury verdict. *Mesa City v. Lesueur*, 21 Ariz. 532, 190 P. 573 (1920). As shown by the evidence, the jury awarded less than the damages incurred.

For the reasons set forth in this opinion, we affirm the judgment of the trial court.

The appellees, Levitt and Olsen, request attorney's fees on appeal pursuant to A.R.

S. § 12–341.01 and Rule 21(c), Rules of Civil Appellate Procedure. Their request for attorney's fees is granted and the matter will be determined upon appellees' compliance with Rule 21(c), Rules of Civil Appellate Procedure.

AFFIRMED.

FROEB, P.J., and CONTRERAS, J., concur.