NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

AMY S FISHER,
*Plaintiff/Appellant*,

*v.*

RONDO POOLS AND SPAS INC,
*Defendant/Appellee*.

No. 1 CA-CV 18-0343

FILED 5-16-2019

Appeal from the Superior Court in Maricopa County
No. CV2014-010050
The Honorable Kerstin G. LeMaire, Judge

**AFFIRMED**

COUNSEL

Mark J. DePasquale, PC, Phoenix
By Mark J. DePasquale
*Co-Counsel for Plaintiff/Appellant*

Law Office of Scott E. Boehm, PC, Phoenix
By Scott E. Boehm
*Co-Counsel for Plaintiff/Appellant*

Lang & Klain, PC, Scottsdale
By George H. King, Michael W. Thal
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

---

J O H N S E N, Judge:

¶1    Amy Fisher appeals the judgment in favor of Rondo Pools and Spas, Inc. following a jury trial. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2    Fisher contracted with Rondo in November 2013 to redesign and remodel her swimming pool. Rondo began working on the job the following month. Multiple disputes soon arose, and Fisher terminated the contract on January 22, 2014. Bob Rondeau, the founder of Rondo, met with Fisher later that month and the parties exchanged emails, but no resolution was reached. Fisher filed a complaint against Rondo with the Arizona Registrar of Contractors ("ROC"), then hired a different contractor, Brandenburg Pools, to complete her pool renovation.

¶3    Fisher sued Rondo in July 2014. She alleged consumer fraud, breach of contract, breach of implied warranty, and breach of the covenant of good faith and fair dealing. Broadly speaking, Fisher alleged Rondo misrepresented its expertise and failed to perform in a professional and workmanlike manner. Fisher asked for damages of $17,723.63 (the deposit she had paid), plus the additional amount she paid to have the work completed by Brandenburg, and punitive damages. Rondo filed a counterclaim alleging Fisher breached by wrongfully terminating the contract.

¶4    Following a six-day trial, a jury found against Fisher on all her claims and in favor of Rondo on its counterclaim. The court awarded $4,005.64 in damages to Rondo, plus $6,935.72 in taxable costs, $286,047.86 in attorney's fees and $13,361.44 in sanctions pursuant to Arizona Rule of Civil Procedure 68, totaling $310,350.66. Fisher timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution,

and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2019) and -2101(A)(1) (2019).[1]

## DISCUSSION

### A. Jury Instructions.

¶5 The primary issue for the jury was whether Rondo materially breached in a manner that allowed Fisher to terminate the contract. On that issue, the superior court instructed the jury as follows:

> A breach of contract occurs when a party fails to perform an obligation under the contract. Not every breach of contract is a material breach. A material breach occurs when a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions or fails to do something required by the contract which is so important to the contract that the breach defeats the very purpose of the contract. Amy Fisher has the burden of proving that any breach was material.

> Material Breach . . . When determining whether [Rondo] materially breached the contract, you may consider [Rondo's] ability to cure or fix the alleged breach and whether [Rondo] can make any reasonable assurances that it would cure the alleged breach.

¶6 Whether a jury instruction correctly states the law is a matter we review *de novo*. *A Tumbling-T Ranches v. Flood Control Dist.*, 222 Ariz. 515, 533, ¶ 50 (App. 2009). But the superior court "has considerable discretion in deciding" what instructions are necessary, and we will affirm its decision absent a clear abuse of discretion. *Cotterhill v. Bafile*, 177 Ariz. 76, 79-80 (App. 1993). On review, we read jury instructions "as a whole with an eye toward determining whether the jury was given the proper rules of law to apply in arriving at its decision." *Thompson v. Better-Bilt Aluminum Prods. Co.*, 187 Ariz. 121, 126 (App. 1996). We consider all the instructions together to determine whether they misled the jury. *Levitt v. First Am. Title Ins. Co.*, 159 Ariz. 359, 364 (App. 1988). When an appellant challenges the instructions, we will reverse a verdict only if an erroneous instruction

---

[1] Absent material revision after the relevant date, we cite the current version of a statute or rule.

prejudiced the appellant's rights. *Am. Pepper Supply Co. v. Fed. Ins. Co.*, 208 Ariz. 307, 309, ¶ 7 (2004).

**¶7**   Fisher argues the superior court erred by effectively instructing the jury that Rondo could cure a breach when the contract contained no such right. But the court did not instruct the jury the contract gave Rondo a right to cure. Instead, the instruction merely told the jury that, in determining whether Rondo materially breached the contract, it could consider Rondo's "ability to cure or fix the alleged breach" and whether Rondo "can make any reasonable assurances that it would cure the alleged breach."

**¶8**   Under Arizona law, although the victim of a material breach may terminate the contract without performing, "the victim of a minor or partial breach must continue his own performance." *Zancanaro v. Cross*, 85 Ariz. 394, 400 (1959). As applied here, this rule means that Fisher lawfully could terminate the contract only if she could show that Rondo materially breached. Fisher correctly contends that whether the contract gave Rondo a right to cure is an issue of contract interpretation that was for the court. But the court did not err by directing the jury that in deciding whether Rondo had materially breached, it could consider, among other things, whether Rondo had the ability to cure and whether it gave assurances that it would do so. In that manner, the instruction focused the jury on the key factors bearing on the materiality of a breach, which is a question of fact. *See Maleki v. Desert Palms Prof'l Props., L.L.C.*, 222 Ariz. 327, 333, ¶ 27 (App. 2009) ("the record contains substantial evidence that [appellee] did not materially breach the lease").

**¶9**   The Arizona Supreme Court has adopted the factors set out in Restatement (Second) of Contracts ("Restatement") § 241 (1981) as a "workable standard to evaluate the triviality of a breach." *Found. Dev. Corp. v. Loehmann's, Inc.*, 163 Ariz. 438, 446 (1990). One of the factors in Restatement § 241 is "the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances." Restatement § 241(d). In the instruction at issue here, the superior court largely mirrored the language of Restatement § 241(d). *Cf.* Rev. Ariz. Jury Instr. (Civil) Contract 9 (5th ed. 2015) (the superior court "may . . . want to instruct the jury on some or all of the factors" of § 241 that can help the jury evaluate whether a breach is material) (citing Restatement § 241).

**¶10**   Fisher cites *Mining Investment Group, LLC v. Roberts*, 217 Ariz. 635 (App. 2008), in which this court declined to apply Restatement § 241 in

determining whether to affirm summary judgment on the issue of whether a party materially breached a contract. *Id.* at 639-40, ¶¶ 17-18. That case is inapposite, however, because the contract there – unlike the contract here – "expressly provide[d] for the materiality of the breach at issue." *Id.* at 639, ¶ 17.

¶11 Although *Loehmann's* applied Restatement § 241 in a dispute between a landlord and a tenant, Fisher does not persuasively argue the Restatement provision is not likewise appropriate here. She contends the notion of cure is unworkable in a construction contract and posits that a purchaser could be "stuck" with an incompetent contractor so long as the contractor was willing to try to fix its mistakes. But neither § 241 nor the instruction the court gave turns on empty promises. The issue is whether the breaching party "will cure his failure," Restatement § 241(d), or, as the court put it here, whether Rondo could "cure or fix the alleged breach" or could reasonably assure Fisher that it would do so.

¶12 More broadly, the factors of § 241 reflect well-established "notions of equity and common sense" that courts will not enforce a forfeiture for "trivial or insignificant" breaches. *Loehmann's*, 163 Ariz. at 445-46; *see also Zancanaro*, 85 Ariz. at 400; Restatement § 241 cmt. a ("The standard of materiality applies to contracts of all types and without regard to whether the whole performance of either party is to be rendered at one time or part performances are to be rendered at different times."). And the Restatement explicitly contemplates application of § 241 to construction cases. *See* Restatement § 241 cmt. b, d, illus. 1, 2, 4, 6 & 7; *see also Tyro Indus., Inc. v. Trevose Const. Co.*, 737 F. Supp. 856, 865-67 (E.D. Pa. 1990) (citing Restatement § 241 in considering whether subcontractor on highway project could have cured its breach even though contract provided no right to cure); *Ranta Const., Inc. v. Anderson*, 190 P.3d 835, 841-42 (Colo. App. 2008) (affirming trial court's application of Restatement § 241 in determining whether breach of construction contract was material); *Oak Ridge Const. Co. v. Tolley*, 504 A.2d 1343, 1348 (Pa. 1985) (citing Restatement § 241, finding homebuilder materially breached by stopping work, noting homebuilder "gave no indication that the company would cure its failure to perform").

¶13 Fisher next argues the cure instruction was confusing and misleading because it was inconsistent with three other instructions the court gave the jury. The first of the three other instructions was labeled "Claims and Elements" and addressed Rondo's counterclaim, which alleged that Fisher breached the contract by wrongfully terminating even though Rondo was "ready, willing, and able to perform." The instruction stated: "[Rondo] claims [Fisher] wrongfully terminated her contract with [Rondo]

that she failed to allow it to cure any claimed deficiencies, and that she failed to mitigate her damages. [Rondo] must prove that they had a right to cure." Fisher does not argue on appeal that this instruction on Rondo's counterclaim was incorrect, but argues it conflicts with the cure instruction discussed above because the latter, she asserts, told the jury it can consider a "right to cure" in determining the materiality of a breach. We see no conflict. Rondo's counterclaim effectively alleged Fisher was liable for anticipatory breach of the contract, and the jury was correctly instructed that to recover, Rondo would have to prove it was "ready, willing and offered to perform its duties under the contract if [Fisher] had not refused to perform."

¶14        Fisher also argues the cure instruction discussed above conflicted with the following two instructions addressing material breach:

> A material breach occurs when a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions.

*        *        *

> A material breach occurs when a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions or fails to do something required by the contract, which is so important to the contract that the breach defeats the very purpose of the contract.

Fisher does not challenge the substance of these instructions, but argues they conflicted with the cure instruction. As with the "Claims and Elements" instruction, however, Fisher has not shown reversible error resulting from any perceived conflict.

¶15        Examining the instructions together, "the jury was given the proper rules of law to apply in arriving at its decision." *Thompson*, 187 Ariz. at 126. The superior court did not abuse its discretion in giving the instructions, which, viewed as a whole, were not so confusing or misleading that they prejudiced Fisher. *See Cotterhill*, 177 Ariz. at 80; *Am. Pepper*, 208 Ariz. at 309, ¶ 7.

## B.        Admissibility of Evidence.

¶16        Fisher also argues the superior court erred by admitting certain evidence. We review the admission of evidence for an abuse of discretion but interpret the Arizona Rules of Evidence *de novo*. *State v. Gill*,

242 Ariz. 1, 3, ¶ 7 (2017). The superior court abuses its discretion when it commits an error of law. *State v. Romero*, 239 Ariz. 6, 9, ¶ 11 (2016). We will not grant a new trial due to an evidentiary error, however, absent both an abuse of discretion and resulting prejudice. *Hudgins v. Sw. Airlines, Co.*, 221 Ariz. 472, 480, ¶ 10 (App. 2009).

### 1. Rondo's settlement offers.

**¶17** Fisher first challenges the admission of testimony and emails reflecting Rondo's offers to settle the dispute after Fisher canceled the contract. Fisher contends the evidence was inadmissible under Arizona Rule of Evidence 408, which bars evidence of settlement negotiations offered to prove the validity or amount of a disputed claim.

**¶18** The first of the two exhibits at issue is Exhibit 143, an email Rondeau sent Fisher in which Rondeau reiterated an offer to refund Fisher $10,110 of her $17,723 deposit. At trial, Rondo introduced Exhibit 143 while cross-examining Fisher about her efforts to hire Brandenburg to complete the pool and her filing of a complaint with the ROC. Rondo's counsel did not examine Fisher about settlement talks or the amounts stated in the email, and instead, quickly moved on to other matters. Fisher also challenges the admission of Exhibit 159, an undated letter (Fisher asserts it was written in February 2014) from Bob Rondeau to Fisher. The letter recounted some of the project's history, detailed Bob Rondeau's efforts to resolve Fisher's issues and complained that Fisher would not allow Rondo to complete work. The letter then recounted Rondo's prior refund offers, which Fisher rejected, and concluded by making a "final" offer to settle the matter for a refund of $8,358.35 plus tax. On direct examination, Rondeau testified about the exhibit and recounted that he offered Fisher a refund of roughly $9,000 to settle the dispute.

**¶19** Although the challenged evidence constituted offers of settlement, Rule 408 bars such evidence only when offered "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Ariz. R. Evid. 408. Fisher does not contend Rondo offered the settlement negotiation evidence to prove or disprove the substance of any claim at issue in the trial. Instead, she argues Rondo offered the evidence to show that Fisher unreasonably refused to settle the case in the hopes of a windfall punitive-damage award. As she puts it, the problem was that the jurors were allowed to know that they were sitting through a six-day trial just before the December holidays on a dispute that could have been avoided if Fisher had accepted Rondo's $9,000 settlement offer.

¶20 We conclude Fisher's contention about the purpose for which the evidence was offered does not implicate Rule 408. *See Dannenbring v. Wynn Las Vegas, LLC*, 907 F. Supp. 2d 1214, 1219-20 (D. Nev. 2013) (no violation of Federal Rule of Evidence 408 when settlement evidence was admitted to prove retaliatory motive); *ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp. 2d 383, 412-13 (S.D.N.Y. 1999) (settlement statements admissible to show a party's "improper motive"); *Resolution Tr. Corp. v. Blasdell*, 154 F.R.D. 675, 681 (D. Ariz. 1993) (no violation of Federal Rule of Evidence 408 when defendant offered evidence not "to prove liability, but rather to reveal to the court what it perceives as the [Plaintiff's] improper retaliatory motive" for the suit). *See also State v. Green*, 200 Ariz. 496, 498, ¶ 10 (2001) ("When interpreting an evidentiary rule that predominantly echoes its federal counterpart, we often look to the latter for guidance.").

## 2. Admission of the Brandenburg email.

¶21 Fisher finally argues the superior court erred in admitting Exhibit 151 because it was inadmissible hearsay and by permitting Rondeau to testify about it because he was not a disclosed expert.

¶22 Exhibit 151 is an email chain between Rondeau and Dave Brandenburg of Brandenburg Pools, which completed Fisher's pool after Fisher canceled her contract with Rondo. In an email, Rondeau tells Brandenburg:

> I am reaching out to you again for your help on my lawsuit with Ms. Fisher. . . . I realize that the pool remodel that you completed for Ms. Fisher is nothing like the contract that we signed with her however, I have to prove this in court. I have attached a 28 line item contract that we signed with Ms. Fisher for your review. . . . It would be a great help if you could estimate what Brandenburg Pools would charge to complete the Rondo Pools contract per the terms of our contract.

Rondeau then instructed Brandenburg to "[p]lease bid the following" line items, which Rondeau identified as "[w]ork to be completed." In the copy of the exhibit admitted at trial, next to each line item, there is a response (presumably from Brandenburg or someone else at his company) listing a price along with clarifying comments where relevant.

¶23 At trial, over Fisher's objection, Rondo introduced Exhibit 151 during Rondeau's direct examination. After tracing through the prices recited in the email, Rondeau testified that the pool Brandenburg eventually built for Fisher was not the same pool she had asked Rondo to

build, and "if Ms. Fisher had just given Brandenburg her contract with Rondo and said I want you to finish this project, it would have cost her less than had she stayed with Rondo."

¶24 Even if the email was inadmissible hearsay, the record does not show the error prejudiced Fisher. *See Dykeman v. Ashton*, 8 Ariz. App. 327, 329 (1968) ("In order to justify the reversal of a case, there must not only be error, but it must be prejudicial to the substantial rights of the person assigning this error, and it will not be presumed that an error is prejudicial so as to require reversal, but the prejudice must appear from the record."). Rondo offered the email to refute Fisher's claimed amount of damages, but the jury found against Fisher and in favor of Rondo on Fisher's claim for breach of contract. *See Sheehan v. Pima County*, 135 Ariz. 235, 239-40 (App. 1982) (because damages were not awarded, any error in admitting evidence relating to damages was harmless); *Dykeman*, 8 Ariz. App. at 329.

¶25 Fisher nevertheless argues Exhibit 151 was prejudicial because it supported Rondo's "overarching defense that Rondo never breached, but Fisher only sued to get a more expensive pool." Fisher, however, fails to cite a specific instance at trial in which Rondo used Exhibit 151 for any purpose other than to refute Fisher's damage calculations. We will not "presume[] that an error is prejudicial so as to require reversal" and in this case, we see no prejudice in the record. *Dykeman*, 8 Ariz. App. at 329.

¶26 In any event, the record contains other evidence - that Fisher does not challenge on appeal – supporting the notion that the pool that Fisher eventually obtained was more elaborate than that which she contracted with Rondo to build. *See Bonine v. Bonine*, 90 Ariz. 319, 320 (1961) (admission of hearsay evidence is not grounds for reversal if there is sufficient competent evidence to sustain a judgment). For example, Robert Snyder, a project manager for Brandenburg Pools, testified the pool Brandenburg built was "completely different" and that comparing the two pools would be like "comparing apples to golden pears."

**CONCLUSION**

**¶27** For the reasons set forth above, we affirm the superior court's judgment in favor of Rondo. Rondo is entitled to its costs on appeal and, in the exercise of our discretion, we award Rondo its reasonable attorney's fees pursuant to A.R.S. § 12-341.01(A) (2019), contingent upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA